SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
CAITLIN WILLIAMS; JOHN DOES 1-5 and
JANE DOES 1-5,

                Plaintiff,

      -against-

L.A. MODELS, INC. and NYC MANAGEMENT GROUP,
INC., d/b/a NEW YORK MODEL MANAGEMENT,

                Defendants.

------------------------------------------------------------------------X

Index No.:108978/07

Date Filed:6/28/07

**SUMMONS and**
**VERIFIED COMPLAINT**

     **YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the State of

New York, County of New York, at the office of said Court at 60 Centre Street, and answer the

Complaint in this action and to serve a copy of your Answer or, if the Complaint is not served

with this Summons, to serve a Notice of Appearance on Plaintiff's attorney within 20 days after

the service of this Summons, exclusive of the day of service (or within 30 days after the service

is complete if this Summons is not personally delivered to you within the State of New York). In

case of your failure to answer or appear, judgment will be taken against you by default for the

relief demanded in the accompanying Complaint.

     The basis of the venue designated is Defendant NYC MANAGEMENT GROUP, INC.'s

place of business and the county in which the causes of action accrued.

Dated: New York, New York
       June 20, 2007

                MELTZER LoPRESTI, LLP

           By:    __/s/_____
                   Anthony A. LoPresti, Esq.

                   30 Broad Street, 37th Floor
                   New York, New York 10004
                   ph.: (212) 425-0551

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X

CAITLIN WILLIAMS; JOHN DOES 1-5 and
JANE DOES 1-5,

                  Plaintiff,

-against-

L.A. MODELS, INC. and NYC MANAGEMENT GROUP,
INC., d/b/a NEW YORK MODEL MANAGEMENT,

                  Defendants.

------------------------------------------------------------------------X

Index No.:108978/07

Date Filed:6/28/07

**VERIFIED COMPLAINT**

**TRIAL BY JURY DEMAND**

      Plaintiff **CAITLIN WILLIAMS**, named in the above captioned matter, by and through her attorneys, **MELTZER LoPRESTI, LLP**, as and for her Verified Complaint, does hereby complain of the defendants **L.A. MODELS, INC.** and **NYC MANAGEMENT GROUP, INC., d/b/a NEW YORK MODEL MANAGEMENT** as follows:

### PRELIMINARY STATEMENT

    1.    This action arises from a nationwide modeling contest, created and sponsored by defendants L.A. MODELS, INC. ("L.A. Models") and NYC MANAGEMENT GROUP ("N.Y. Models"). The contest was known primarily as the "L.A. Looks Model Search Contest", originally named after "L.A. Looks" hair products.  These contests ran annually starting in about 1995, with thousands of entrants, spanning dozens of cities across the U.S.

    2.    Plaintiff CAITLIN WILLIAMS ("Williams") was the First Runner-up (Second Place) prize winner of the 2002 contest, finishing behind model Jessica Stam, who won First Place. However, plaintiff, along with numerous other "winners" throughout various contests

1

were never paid any prize money. To add insult to injury, some winners were even told they owed money, in some cases, thousands of dollars.

3.    Plaintiff brings this action to recover damages resulting from certain acts and/or omissions of the defendants, by reason of the contests.

## PARTIES

4.    At all times relevant hereto, plaintiff Williams was First Runner-Up winner of the 2002 L.A. Look Model Search Contest ("the Contest" or "2002 Contest").

5.    At the time of the Contest, Williams was a minor, age 14.

6.    That plaintiffs designated as "JOHN DOES 1-5" and "JANE DOES 1-5", said names being fictitious, are upon information and belief, other winners of contests sponsored by defendants, in the years at issue and prior or subsequent years, that have suffered damages by reason of the contests.

## DEFENDANT L.A. MODELS

7.    Defendant L.A. Models is a corporation that maintains an office at 7700 Sunset Blvd., Los Angeles, California 90046.

8.    Defendant L.A. Models purports to be a model management company/modeling agency that provides specialized and personalized management services to fashion models, and is self-described as "one of the most powerful and successful agencies in the industry". See http://www.lamodels.com

9.    At all times relevant hereto, defendant L.A. Models and defendant N.Y. Models acted both as a modeling agency for plaintiff, and as a self-described "primary promotional partner" in the "L.A. Look" model search contests.

2

### DEFENDANT NEW YORK MODELS

10.    Defendant N.Y. Models is a corporation that maintains an office at 596 Broadway, Suite 701, New York, New York 10012.

11.    Defendant N.Y. Models purports to be a model management company/modeling agency that provides specialized and personalized management services to fashion models, and which "searches throughout the world for undiscovered talent, intent upon its goals to turn unknown models into international stars". See http://www.newyorkmodels.com

12.    At all times relevant hereto, defendant N.Y. Models acted as the primary modeling agency for plaintiff, and is the self-described "sister agency" to defendant L.A. Models.

### VENUE

13.    In accordance with Rule 503(a) of the New York Civil Practice Law and Rules, venue is appropriate in this Court.

### STATEMENT OF FACTS

14.    In about 1995, the "L.A. Looks Model Search" began. Subsequently, the contest became a nationwide, annual event.  As described on the websites of both defendant L.A. Models and N.Y. Models:

> "LA Looks has traveled across the USA year to year to discover the next face in modeling and awarding $250,000 in guaranteed modeling contracts. In 2000, LA Look opened its search for men as well and started a battle between the sexes for the coveted prize of $100,000 - the only search in the USA to do this."

(Exhibit "A" ).

15.    As explained in a 2001 promotional press release:

3

" 'We are searching the country for not only the next cover model, but for the next supermodel,' remarked Geri Lieberman, L.A. LOOKS director of marketing for hair care. 'As a top hairstyling brand, with the #1 selling gel in America, we are setting trends and looking for that face, with a certain type of style, charisma and attitude to represent a generation.'

Having received over 40,000 entries, the L.A. LOOKS Model Search is currently on tour visiting over 30 cities in the U.S., and is gearing up to make its final stop in L.A. to name its winner."

(Exhibit "B").

16.     At all relevant times prior to a contest, defendants and their agents, embarked upon high profile, nationwide campaigns in which young adults and aspiring models were promised the chance to compete for "the coveted prize of $100,000", and that defendants would be "awarding $250,000 in guaranteed modeling contracts".

17.     In Spring, 2002, plaintiff Williams was approached at school by a talent scout for Options Talent, Inc. ("Options Talent"), a co-partner with defendants L.A. Models and N.Y. Models in the 2002 Contest.  The scout solicited plaintiff to sign with Options Talent and to enter the "L.A. Look" model contest.

18.     Plaintiff was interviewed by employees/agents of Options Talent, and was told that in order to sign with them and enter the Contest, she was required to pay dues.  Thereafter, plaintiff paid Options Talent $600.00 to sign, with monthly payments of $19.95 per month thereafter.

19.     In July 2002, plaintiff entered the 2002 Contest by entering the Regional Competition, in King of Prussia, Pennsylvania.

20.     At this time, due to promotions, solicitations and the rules posted by the defendants, plaintiff believed that the contest was only open to U.S. residents.  Defendants

solicited potential contestants, which were required to be "U.S. legal residents, between the ages of 12-24", inviting them to enter the contests via entry forms or at "local events" held in stores and malls nationwide.  As explained in a 2001 press release:

> "From February to May, the contest was open to male and female U.S. legal residents, between the ages of 12-24. Contestants could enter at local events in over 30 cities nationwide, or via mail-in entry forms available at participating retail outlets, in Teen People, Cosmo Girl, Seventeen or on the web at www.lalooks.com"

Exhibit "B".

21.     Unknown to plaintiff, upon information and belief, prior to the 2002 Contest the defendants had already chosen contestant Jessica Stam, a Canadian citizen, to be the winner.

22.     At the time defendants awarded Jessica Stam First Prize, she was neither a U.S. citizen, nor a U.S. resident eligible to work in the U.S.

23.     In July 2002, plaintiff was selected as one of twelve contestants to go to the semifinals in New York, New York to compete for the prizes offered by the defendants.

24.     Thereafter, by email and telephone, the defendants contacted plaintiff and instructed her as to the next stage of the contest.

25.     At this time, the defendants, their representatives and agents, including Erin Lundgren, continued to represent to plaintiff that she could win prize money, "guaranteed income" and an exclusive modeling contract, and that if she won the 2002 Contest, she would be entitled to $100,000.00 and/or "guaranteed income" of $100,000.00.

26.     On or about August 2, 2002, plaintiff attended and was selected as a finalist in the New York Regional Competition, held in New York, New York. This entitled plaintiff to then

proceed to the final stage of the contest.

27.     Model Jessica Stam, who had not competed in any of the local competitions, was now permitted by the defendants to enter the New York Regional Competition, where she was then chosen by the defendants to advance to the final competition, along with plaintiff.

28.     At all relevant times, prior to the New York Regional Competition, the defendants neither presented a written agreement to plaintiff as to the contest, nor discussed any restrictions or conditions pertaining to the same.

29.     On or about August 26, 2002, only <u>one week</u> prior to the 2002 Contest, the defendants forwarded to plaintiff a packet containing an eight page standardized agreement, with schedules attached, titled "L.A. Models/New York Model Management Agreement" ("2002 Model Management Agreement") .

30.     In reliance upon the defendants' prior inducements and promises of winning prize money and/or "guaranteed income" if she would enter the contest, and based upon a fear that failure to execute this agreement as presented would result in a refusal of the defendants to honor their promises made, plaintiff Williams signed and forwarded the agreement on the day of the Contest.

31.     On or about September 5, 2002, plaintiff Williams won the First Runner-up (Second Place) prize of $75,000.00.  The First Place prize of $100,000.00 was awarded to Jessica Stam.

32.     Thereafter, plaintiff was offered and entered into an exclusive model management agreement with defendant N.Y. Models.

33.     At all relevant times, the defendants repeatedly represented to plaintiff that she

6

would "make a lot of money"; at various times after plaintiff won the contest, employees of defendants, "Erin" and "Cory", promised plaintiff "we are going to book you so much" and "you are going to get so much work".

34.    At all relevant times, plaintiff was willing and available to work; plaintiff traveled to New York, as requested and as needed.

35.    However, in the months thereafter, plaintiff became discouraged and disillusioned; defendants' numerous promises of modeling work were not being fulfilled though no fault of plaintiff.

36.    The defendants also failed to fulfill their promises to guarantee income and to pay plaintiff according to the "guaranteed" monthly payments set forth in the schedule to the parties' agreement.

37.    The defendants also failed to fulfill their promises to adequately manage plaintiff's career as her "mother agent". Examples include: defendants routinely sent plaintiff on pointless and inappropriate castings and assignments that failed to generate income; defendants were often unprepared; defendants would even borrow money from plaintiff; "photo sessions" were often wasteful, unproductive and resulted in no pictures for plaintiff's portfolio and/or no portfolio at all; defendants would often schedule only one casting per day.

38.    In one instance, defendants sent plaintiff to a model competition in Brazil, yet failed to adequately supervise the event. Plaintiff was then severely injured when a glass runway collapsed. Defendants, however, failed to remedy the situation, failed to compensate plaintiff for lost time, and even billed plaintiff for the resulting costs.

39.    During this time, and at all relevant times thereafter, plaintiff's parents spent

7

considerable time and money to support her modeling career. As a result, plaintiff's parents and family incurred significant costs and expenses.

40.    Despite due demand, the defendants have refused to pay plaintiff any of the contest prize money, and have failed to guarantee any income, as promised.

41.    At all relevant times, in 2002 through 2003, the L.A. Models Defendants used Williams, her image, etc., to promote their 2003 Contest.

42.    Based upon the promises made by defendants, and plaintiffs' reliance thereon, plaintiff did, among other things, forego educational opportunities, employment with other viable model agencies, and other career goals; plaintiff also did, along with her family, suffer financial and other hardships.

43.    At all relevant times, not only have defendants refused to pay the plaintiff any of the contest prize money, but defendants have in fact, actually demanded that plaintiff pay them money.

44.    Upon information and belief, defendants have also made numerous improper, unauthorized and fraudulent deductions from monies due and owing to plaintiff, without proper justification.

45.    Plaintiff was later informed that she and her parents would be liable for all costs and fees deducted from her earnings as "debt".

46.    Web Style Network co-sponsored the 2002 Contest along with the defendants.

47.    In April 2004, the New York State Consumer Protection Board ("CPB") issued a warning about Trans Continental Talent, formerly known as Web Style Network, for certain deceptive trade practices, including (i) charging up front fees to enter a model contest; and (ii)

8

representing that it guarantees modeling contracts, specifically, that it "advertises 'more than

$100,000 in contracts' to winners". <u>See</u> *Nationwide Fashion and Talent Competition Offers*

*Prize "Contracts" But No Work For Contest Winners*, NYS CPB, April 19, 2004, <u>Exhibit "C"</u>.

48.    Plaintiff had also been required to pay dues prior to entering the 2002 Contest;

$600.00 to sign, with monthly payments of $19.95 per month thereafter.

49.    At all relevant times, despite plaintiff's compliance with defendants'

preconditions, defendants failed and/or refused to honor the contests' promises, without any

cause or justifiable reason, and did not pay plaintiff any contest prize money, "guaranteed

income" or $75,000 in a "guaranteed modeling contract".

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS
(Breach of Contest Contract)

50.    Plaintiff incorporates paragraphs "1" through "49", above by reference.

51.    That plaintiff did enter into agreements with the defendants, including oral

agreements and written contracts, whereupon defendants, their agents and /or employees did

promise among other things, to award plaintiff cash prizes and/or "guaranteed income" and/or

other prizes.

52.    That by reason of the actions and/or omissions of defendants, their agents and/or

employees, jointly and severally, as partners, said defendants did breach their contractual

obligations to the plaintiff.

53.    That at the time defendants entered into the agreements with plaintiff, all

defendants knew or should have known they could not and/or would not "guarantee income" to

the plaintiff and/or that defendants could not and/or would not pay plaintiff the prize money

9

offered and/or that defendants could not and/or would not honor the agreements.

54.    That defendants did procure written agreements with plaintiff containing hidden, onerous and overreaching conditions and limitations of liability, upon duress, undue influence and by improper means.

55.    That, upon information and belief, at the time defendants entered into agreements with plaintiff Williams, defendants knew that Stam would win the 2002 Contest, despite the fact that Stam was ineligible to enter the 2002 Contest.

56.    That defendants have failed and/or refused to honor the contests' promises, without any cause or justifiable reason.

57.    That upon information and belief, defendants have also made improper and fraudulent deductions from monies due and owing to plaintiff, without proper justification.

58.    That said breach of agreement by defendants did cause reasonably foreseeable harm and damage to plaintiff.

59.    That defendants' breach did directly cause damage and disruption to plaintiff's professional career.

60.    That by reason of said breach plaintiff has suffered, among other things, financial hardship, loss of educational and financial opportunity, personal humiliation and stress.

61.    That the breach of contract by the defendants was wilfull, wanton, reckless and demonstrated callous disregard for the rights of the plaintiff, as well as other contestants, and also evidenced a degree of bad faith evincing a disingenuous and/or dishonest failure to carry out the contracts so as to warrant an assessment of punitive damages.

62.    That by reason of the foregoing, plaintiff has been caused to be damaged in an

10

amount to be determined at trial, but no less than the sum of Five Hundred Thousand Dollars ($500,000.00) in actual and compensatory damages, plus interest and the costs of this action and One Million Dollars ($1,000,000.00) in punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST DEFENDANTS**
(Breach of Contract as "Mother Agent")

63    Plaintiff incorporates paragraphs "1" through "62", above by reference.

64.    At all relevant times, defendants not only failed to honor even the basic promises made pursuant to the contests, but also breached the parties' agreements by, among other things, grossly mismanaging plaintiff's modeling career; failing to exercise diligence and care in procuring adequate exposure and income; failing to adequately promote, exploit, negotiate on behalf of and/or book plaintiff for modeling jobs; failing to exercise diligence and care in booking plaintiff for modeling jobs and in representing plaintiff to potential clients; deducting improper costs and fees; breaching fiduciary duties and duties of good faith and fair dealing; and, failing to adequately and competently provide management services and represent plaintiff's best interests as her exclusive "mother agent".

65.    That by reason of said breach plaintiff has suffered, among other things, financial hardship, loss of educational and financial opportunity, personal humiliation and stress.

66.    That by reason of the foregoing breach of contract, plaintiff has been caused to be damaged in an amount to be determined at trial, but no less than the sum of Five Hundred Thousand Dollars ($500,000.00) in actual and compensatory damages, plus interest and the costs of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**

11

**AGAINST DEFENDANTS**
(Quantum Meruit)

67    Plaintiff incorporates paragraphs "1" through "66", above by reference.

68.    At all relevant times, the plaintiff provided services to all defendants, including but not limited to performance of modeling services and promotional services incidental to being "winners" in the contests.

69.    Under the doctrine of quantum meruit, defendants have been unjustly enriched by receiving the benefit of the services provided by the plaintiff in an amount to be determined at trial, but believed to be no less than Five Hundred Thousand Dollars ($500,000.00), plus interest and the costs of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**AGAINST DEFENDANTS**
(Fraud /Intentional Misrepresentation)

70.    Plaintiff incorporates paragraphs "1" through "69", above by reference.

71.    That defendants, for gain and trade, did consciously and deliberately mislead the plaintiff, and upon information and belief, like contestants into believing that if they won the contests they would be awarded prize money and a modeling contract, not simply a "guarantee of income" with numerous conditions, restrictions and deductions.

72.    That defendants wrongfully and fraudulently induced and permitted plaintiff, and like contestants, to enter into and participate in the contests, without informing them as to its true nature, until they had already been chosen as finalists.

73.    That defendants did procure written agreements with plaintiff containing hidden, onerous and overreaching conditions and limitations of liability, upon duress, undue influence

12

and by improper means.

74.    That defendants, at all relevant times, deceived the plaintiff, both orally, in writing, in advertisements, promotions and promotional materials by, among other things:

(i) misrepresenting the true nature of the contest prizes;

(ii) misrepresenting their ability to "guarantee" income, when in fact, they could not;

(iii) misrepresenting the numerous conditions, deductions, costs and fees incurred and demanded of plaintiff;

(iv) intentionally deceiving contestants in the 2002 contest as to sponsorship and/or affiliation with "LA Looks";

(v) upon information and belief, improperly assuring the outcome of the 2002 Contest by predetermining its winner; and

(vi) improperly entering and allowing a contestant to win the 2002 Contest, who was known by defendants to be ineligible to enter and win the contest, as a non US resident and without legal ability to work in the U.S., contrary to the contest's rules.

75.    That, upon information and belief, defendants made such knowing misrepresentations with the intent of fraudulently inducing plaintiff, like contestants and aspiring models, into entering into an exclusive agreement with defendants for services as models, and to prevent plaintiff, like contestants and aspiring models, from entering into agreements with any other modeling agencies.

76.    That defendants did show a complete lack of good faith in advertisements, promotions and representations to plaintiff, and like contestants, by misleading potential contestants into believing that, among other things, the contest prizes were awarded without

13

numerous conditions, restrictions, deductions and the burden of pursuing prize monies if clients failed to pay the defendants for their services.

77.    That at all times, the defendants knew they would not pay the promised prize monies, that they would not pay the prize monies as scheduled and that they could not "guarantee" income or work.

78.    That defendants did mislead and, in bad faith, take advantage of plaintiff, who was a minor, under 18 years of age, at the time the parties entered into any written agreements.

79.    That plaintiff relied upon defendants' misrepresentations, to her detriment.

80.    That plaintiff did rely upon defendants' misrepresentations and promises by, among other things, forgoing educational opportunities, foregoing entering into employment with other model agencies, foregoing other career goals, and incurring significant costs and expenses.

81.    That defendants' purported reasons for failing and/or refusing to pay plaintiff the monies promised were untrue, were made in bad faith, and with the intent to deceive and discourage plaintiff from pursuing her rightful property.

82.    That in reliance upon defendants' continued misrepresentations as to purported reasons for failing and/or refusing to pay plaintiff the monies promised, plaintiff continued to work for the defendants' modeling agencies and to refrain from seeking other employment to their detriment.

83.    That due to the defendants' willful, wanton and fraudulent misrepresentations, plaintiff has been further damaged in an amount to be determined at trial, but believed to be no less than the amount of Five Hundred Thousand Dollars ($ 500,000.00).

84.    That the conduct of the defendants towards plaintiff, was wilfull, wanton, reckless and evinced callous disregard for the rights of the plaintiff, that the business practices of defendants were patently deceptive, misleading and violative of New York and California law, including New York consumer protection laws, so as to warrant an assessment of punitive damages.

85.    That as a result of the willful, fraudulent and deceitful nature of the overall business activities of defendants to past and present contestants, as well as potential contestants and the public at large, plaintiffs are entitled to punitive damages from defendants, jointly and severally, in an amount to be determined at trial, but no less than One Million Dollars ($1,000,000.00).

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANTS
(Constructive Trust)

86.    Plaintiff incorporates paragraphs "1" through "85", above by reference.

87.    As per the parties' agreements, plaintiff is the rightful owner of funds totaling over Seventy-Five Thousand Dollars ($ 75,000.00), with the promise that said monies would be advanced to plaintiff.

88.    As per the parties' agreements, defendants agreed to hold such funds in trust in the name of plaintiff, and in an "account" upon which "advances" were to be made by defendants.

89.    As per the parties' agreements and by law, defendants were required to hold at least 15% of a minor's gross payments in "an established trust account".

90.    By refusing to remit said monies, defendants have unlawfully and fraudulently

obtained funds belonging to plaintiff.

91.    Defendants have been unjustly enriched as a result of their actions.

92.    Defendants are acting as a constructive trustee over said funds, and owe a duty to convey title, interest and ownership of these funds to plaintiff.

93.    As a result of the above, plaintiff requests that a constructive trust be imposed upon the prize money at issue in this action.

**WHEREFORE**, Plaintiff demands judgment as follows:

a.    ON THE FIRST CAUSE OF ACTION, against defendants, jointly and severally, damages and interest to the date of final adjudication of this matter, an amount to be determined at trial, but no less than the sum of Five Hundred Thousand Dollars ($500,000.00) in actual and compensatory damages, with interest and the costs of this action and One Million Dollars ($1,000,000.00) in punitive damages;

b.    ON THE SECOND CAUSE OF ACTION, against the defendants, damages in an amount to be determined at trial, but no less than the sum of Five Hundred Thousand Dollars ($500,000.00) in actual and compensatory damages, plus interest and the costs of this action.

c.    ON THE THIRD CAUSE OF ACTION, against defendants, jointly and severally, damages and interest to the date of final adjudication of this matter, an amount to be determined at trial, but believed to be no less than Five Hundred Thousand Dollars ($500,000.00), with interest and the costs of this action;

d.    ON THE FOURTH CAUSE OF ACTION, against defendants, jointly and severally, damages and interest in an amount to be determined at trial, but no less than Five Hundred Thousand Dollars ($500,000.00) each; and punitive damages, jointly and severally, in

16

an amount to be determined at trial, but no less than One Million Dollars ($1,000,000.00);

      e.     ON THE FIFTH CAUSE OF ACTION, against the defendants, that a constructive

trust be imposed upon the prize money at issue in this action.

Dated: New York, New York
      June 20, 2007

                    Respectfully submitted,

                    MELTZER  LoPRESTI, LLP

          By:     __/s/_____
                    Anthony A. LoPresti

                    30 Broad Street, 37th Floor
                    New York, New York 10004
                    (212) 425-0551
                    *Attorneys for Plaintiff*

# VERIFICATION

STATE OF NEW YORK    )
                           )SS.:
COUNTY OF NEW YORK  )

      CAITLIN WILLIAMS, being duly sworn, deposes and says:

      I am the plaintiff herein; I have read the foregoing Complaint and know the contents thereof; that the same is true to my knowledge, except to matters therein stated to be alleged upon information and belief, and that, as to those matters, I believe them to be true.

      The grounds of my belief as to all matters not stated upon my knowledge are as follows: investigation and information received by me in the course of my dealings with the defendants.



                         __/s/_____
                         CAITLIN WILLIAMS

Sworn to before me this
20th day of June 2007
/Anthony LoPresti/
Commission expires 1-24-2010

18

**Exhibit "A"**

**Exhibit "A"**





The LA Look model search began in 1995, organized through LA Models, the largest and most well known agency on the west coast. LA Look has traveled across the USA year to year to discover the next face in modeling and awarding $250,000 in guaranteed modeling contracts. In 2000, LA Look opened its search for men as well and started a battle between the sexes for the coveted prize of $100,000-the only search in the USA to do this.

Past contestants have worked for top designers and have appeared on the pages of the leading fashion magazines. Brigitte Swidrak, the winner of the 1999 search, is quickly becoming a star having just shot two covers for Russian Vogue. Brigitte also has appeared in advertisements for DKNY, Roberto Cavalli, Abercrombie & Fitch, Charles David, La Perla, Penny Black and on the pages of American Vogue, Italian Vogue, German Vogue, British Vogue, Harper's Bazaar, Citizen K, Italian Glamour and LA Official.

LA Look continues to grow and develop with the final event being held in New York City for the past 2 years. New York Models, sister agency to the LA Models, also participates in the search for new talent. The agency that represents the likes of Elle Macpherson, Sarah O'Hare, Omahyra, Travis, and Matt Duffie, is one of the top high fashion agencies in New York City known for its' trendsetting style.

With the national finals being held in the city that doesn't sleep, model hopefuls will get the chance to take a bite out of the big apple super model style. Being pampered in the top salons, whisked around town in limousines and mingeling with the fashion elite, New York City is the Prime Spot to host this amazing event.

Keep a look out for us in your town.

**Exhibit "B"**

**Exhibit "B"**



*PRESS*
*RELEASE*

## POP DIVA VITAMIN C TO PERFORM AT AND HOST THE
## L.A. LOOKS MODEL SEARCH FINAL EVENT WHERE MEN & WOMEN BATTLE AGAINST EACH OTHER FOR TOP PRIZE

**12 of the Nation's Top Male & Female Model Contenders To Compete for $100,000/**
**2-Year Modeling Contract With L.A. Models, At 1650, Tuesday, June 12, 8-10PM**

### FOR IMMEDIATE RELEASE:

LOS ANGELES - 12 contestants from all over the U.S. will be flown to L.A. to experience all that is Hollywood ... from fashion studios, beauty makeovers, runway training, to celebrity meetings, they will get a taste for what it takes to be an international supermodel. From the moment they step off the plane a camera crew will document their every step ... with an expert panel of judges watching their every move - looking for the new L.A. Look!

L.A. LOOKS Model Search, the only modeling contest to pit men against women for the top prize, will hold its final event at one of Hollywood's hottest exclusive clubs - "Sixteen-Fifty" (A.K.A. - VYNYL - 1650 Schrader Boulevard, Hollywood), on Tuesday June 12, from 8-10PM.

Vitamin C (Film: Dracula 2000, Music: Graduation, More), the latest "it girl" turned pop culture dynamo, is scheduled to perform and host this year's event. Having conquered radio, video, fashion mags, and movies, Vitamin C is ready to inspire the 12 young men and women competing in the LA LOOKS Model Search to launch their own careers!

"We are searching the country for not only the next cover model, but for the next supermodel," remarked Geri Lieberman, L.A. LOOKS director of marketing for hair care. "As a top hairstyling brand, with the #1 selling gel in America, we are setting

L.A. LOOKS Model Search 2001 Final Event Press Release

Page 2 of 2

trends and looking for that face, with a certain type of style, charisma and attitude to represent a generation."

Having received over 40,000 entries, the L.A. LOOKS Model Search is currently on tour visiting over 30 cities in the U.S., and is gearing up to make its final stop in L.A. to name its winner.

The final event will take place on Tuesday, June 12th, however the judging begins the moment they arrive. Each contestant will be put through the paces, with four days of intensive runway training, fashion fittings, hair and makeup makeovers, photo shoots, meetings with leading designers, stylists, and top agents from L.A. Models.

At the final event, the contestants will be judged on overall appearance, photogenic quality, and style, all while showcasing the latest fashions by leading designers William B., "L.A. Designer of the Year," and J. Barnett. This perfect blend of celebrities, style, music and beauty is what makes the L.A. LOOKS Model Search the premiere modeling event of the year.

A grand prize winner will be selected by a panel of judges including Heinz Holba, president and c.e.o., L.A. Models, Geri Lieberman of L.A. LOOKS, designer William B. along with other top industry professionals. The grand prize winner's modeling career will be launched with a $100,000/2-year modeling contract with L.A. Models. The first runner-up receives a $50,000/2-year modeling contract with L.A. Models, two second runners-up receive a $30,000/2-year modeling contract with L.A. Models and two third runners-up receive a $20,000/2-year modeling contract with L.A. Models.

According to Heinz Holba, president & c.e.o., L.A. Models, previous winners have appeared in shows and advertisements for designers including Tommy Hilfiger, Richard Tyler, Christian Dior, Max Studio, Charles David, Chloe, Calvin Klein, and in international magazines such as Elle, Vogue, Cosmopolitan, and Marie Claire, among others.

The L.A. LOOKS Model Search was created by L.A. LOOKS, the top hairstyling product and the #1 selling hairstyling gel in the U.S., and is partnered by leading West Coast modeling agency, L.A. Models. From February to May, the contest was open to male and female U.S. legal residents, between the ages of 12-24. Contestants could enter at local events in over 30 cities nationwide, or via mail-in entry forms available at participating retail outlets, in Teen People, Cosmo Girl, Seventeen or on the web at www.lalooks.com

### 

CONTACT: Ed Baran
Ed Baran Publicity - T: 213-482-4696
LALOOKS@edbaran.com
www.edbaran.com

**Exhibit "C"**

# New York State

| | | Governor Pataki | map-NY | e-bizNYS | Citizen Guide |

| CPB Home | Consumer Law Help Manual | Press Releases | Strategic Programs | Consumer Links | About the CPB |

**Go Back To Press Releases**

Contact: Jon Sorensen (518) 473-9472                    For Immediate Release: April 19, 2004

## Nationwide Fashion & Talent Competition Offers Prize 'Contracts' but No Work for Contest Winners

### 'No Reuben, no Clay, no answers' from contest tied to former Wilhelmina modeling scam

The New York State Consumer Protection Board ("CPB") today issued a consumer alert against "Fashion Rock," a nationwide fashion and talent competition, because previous winners have not received the modeling and recording work advertised by this contest.

"Fashion Rock, which is held at least four times a year, has been luring thousands of young people to Florida by offering prize 'contracts' that will launch their careers in modeling, singing, acting and dancing," said CPB Chairperson and Executive Director Teresa A. Santiago.

"But after six Fashion Rock competitions, contest winners say that there hasn't been a single record released – or even one fashion layout produced – from any of these so-called prize contracts."

"Fashion Rock should stop pretending to be a competition like 'American Idol.' When winners are eventually paid -- and some have not been paid at all -- these so-called 'contracts' are simply cash prizes paid in monthly installments with no work provided to the winners," said Chairperson Santiago.

In a fine-print notice to Fashion Rock contestants, the company behind Fashion Rock states that these are only "endorsement" contracts. But that disclaimer is not used when Fashion Rock advertises "more than $100,000 in contracts" to winners.

"Competitions such as American Idol have been making instant stars. But at Fashion Rock, we find no Reuben, no Clay and, for consumers, no answers," said Chairperson Santiago, noting that Fashion Rock's organizers have refused to disclose the names of previous winners, the prizes they allegedly have been paid; the names of judges or any other important consumer information.

""For a competition that's supposed to promote young talent, the secrecy surrounding Fashion Rock is hard to understand," said Chairperson Santiago. "Perhaps they should change the name of Fashion Rock to 'American Idle' because nothing seems to happen after contestants spend at least $1,500 to attend this contest."

Joining the CPB's warning today was Sandra Couto of Patchogue, Long Island, who placed first in a Fashion Rock competition last year.

"I would not suggest (Fashion Rock) to anybody," said Ms. Couto. "They will say everything that you want to hear and they don't come through with what they promise you."

Ms. Couto said Trans Continental Talent, the company behind Fashion Rock, uses high-pressure and misleading sales tactics to lure thousands of young people into purchasing a place in Fashion Rock competitions.

Ms. Couto said the same tactics were used on her last year when she spent $1,600 to join the Wilhelmina Scouting Network, a scam website and photography service, that Trans Continental Talent ("TCT") directed last year.

TCT is the Florida company of boy-band music promoter Lou Pearlman. Last year, Pearlman's company was behind a nationwide modeling, singing and talent scam called the Wilhelmina Scouting Network. Pearlman launched Fashion Rock last year as part of the Wilhelmina Scouting

Network, which was renamed Web Style Network after the CPB issued a consumer warning about the company's misleading sales practices.

Ms. Couto said her first-place prize at Fashion Rock – a $37,500 modeling "contract" – took nearly a year to arrive and, after close inspection, was not worth signing. The contract tied Ms. Couto to Trans Continental Talent for next three years. But the contract did not offer any specifics about modeling jobs, she said.

TCT also has not paid the rest of her prizes: $1,000 in cash and a $100 gift card, Ms. Couto said.

In a disclaimer given to Fashion Rock contestants, TCT states, "All prizes are endorsement contracts that provide for the applicable prize amount to be paid over the life of the contract in monthly installments."

In addition to questions about prizes, contestants complain that they did not have a chance to meet with leading agents as Fashion Rock advertises. Top agents and companies do not attend Fashion Rock, participants say.

The next Fashion Rock ("Summer Fest") is scheduled for Memorial Day weekend with another contest (called "Sun Fest") slated for July 29 - August 1.

"The information we have requested is what any consumer has a right to know before they spend close to $2,000 for a trip to Orlando," said Chairperson Santiago. "Too often, consumers get the bad news after they have already paid thousands of dollars."

"When kids hear they have a chance to record at Trans Continental Talent, they think of the big bands that Lou Pearlman has launched at TCT," said Chairperson Santiago. "But Fashion Rock winners have not been given that opportunity. And young people don't know this when they sign up for Fashion Rock."

Chris Brown of Rochester, Minnesota was one of the signing contest winners at a Fashion Rock last year. But the young musician was never given a chance to use TCT's studio. Instead he is being paid monthly payments.

DeAngelo Pollard, a 22-year-old public-relations student at Indiana State University, thought he won a chance to participate in this spring's "Fashion Week" show in Bryant Park. Instead, Pollard said Fashion Rock cancelled the Fashion Week opportunity and gave him a ticket to attend another show in Orlando.

"It was TCT's prior success in the music business that lured thousands of kids and parents into joining the Wilhelmina Scouting Network. Now we see the same pattern happening at Fashion Rock and we want the deception to end."

[Home Page]    [Consumer Law Help Manual]    [Press Releases]
[Strategic Programs]    [Consumer Links]    [About the CPB]
New York State Consumer Protection Board
5 Empire State Plaza, Suite 2101, Albany, New York 12223-1556
privacy statement    [E-Mail the CPB]