Anthony A. LoPresti, Esq.
MELTZER LoPRESTI, LLP
545 Fifth Avenue, Suite 1205
New York, New York 10017
Ph.: (212) 867-1100
fax: (646) 349-3000
aalopresti@meltzerlopresti.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NIC BEZUSZKA, a/k/a NIC MARYLIW; GILBERT
KUNCL, individually and as legal guardian of JESSICA
KUNCL; JESSICA KUNCL; TROI SULIMAN, individually
and as legal guardian of ASHLEY SULIMAN; ASHLEY
SULIMAN; LINDA WILLIAMS, individually and as legal
guardian of CAITLIN WILLIAMS; CAITLIN WILLIAMS;
MICHELE MILLER; JOHN DOES 1-5; and
JANE DOES 1-5,

Index:  04 Civ. 07703 (NRB)
Purchased: 9-29-04 ECF

                          Plaintiffs,

**FIRST AMENDED
VERIFIED COMPLAINT**

              -against-

**TRIAL BY JURY DEMAND**

L.A. MODELS, INC.; NYC MANAGEMENT GROUP,
INC., d/b/a NEW YORK MODEL MANAGEMENT;
HEINZ HOLBA, individually and in his official capacity;
SCHWARZKOPF & DEP, INC.,

                          Defendants.
------------------------------------------------------------------------X

     Plaintiffs named in the above captioned matter, by and through their attorneys, Meltzer

LoPresti, LLP, as and for their First Amended Verified Complaint, do hereby complain of the

collective defendants as follows:

## PRELIMINARY STATEMENT

     1.    This action arises from an annual, nationwide modeling contest, created and

sponsored by defendants, known primarily as the "L.A. Looks Model Search Contest"; the contest

earnings.

159.    At all relevant times, defendants made no complaints to plaintiff about her availability to model.

160.    During this time, and at all relevant times thereafter, plaintiff's parents spent considerable time and money to support her modeling career. As a result, plaintiff's parents and family incurred significant costs and expenses.

161.    Despite due demand, defendants have refused to pay plaintiff any of the contest prize money, and have failed to guarantee any income, as promised.

162.    At all relevant times, in 2001 through 2002, defendants used Suliman, her image, etc., to promote the 2002 Contest, which was held in New York City. Defendants continued to use Suliman, her image, etc., to promote subsequent contests, and upon information and belief, continue to do so until the present.

### Facts Relevant to Plaintiff Williams

163.    Plaintiffs incorporate paragraphs "1" through "162", above by reference.

164.    In Spring, 2002, plaintiff Williams was approached at school by a talent scout for Options Talent, Inc. ("Options Talent"), a co-partner with defendants L.A. Models, N.Y. Models and Holba in the 2002 Contest. The scout solicited plaintiff to sign with Options Talent and to enter the "L.A. Look" model contest.

165.    Plaintiff was interviewed by employees/agents of Options Talent, and was told that in order to sign with them, she was required to pay dues. Thereafter, plaintiff paid Options Talent $600.00 to sign, with monthly payments of $19.95 per month thereafter.

166.    In July 2002, plaintiff entered the 2002 Contest by entering the Regional

30

Competition, in King of Prussia, Pennsylvania.

167.    At this time, due to the promotions and solicitations made by the L.A. Looks Defendants, and agents of the same, plaintiff believed that the 2002 Contest was indeed sponsored by L.A. Looks, the brand name of defendant Schwarzkopf, known worldwide.

168.    At this time, due to promotions, solicitations and the rules posted by the L.A. Looks Defendants, plaintiff believed that the contest was only open to U.S. citizens. See Rules, Exhibit "D".

169.    Unknown to plaintiff, contestant Jessica Stam, who would later win the 2002 Contest, was neither a U.S. citizen, nor a U.S. resident eligible to work in the U.S.

170.    Unknown to plaintiff, upon information and belief, prior to the contest the L.A. Models Defendants had already chosen contestant Jessica Stam to be the Winner of the 2002 Contest.

171.    In July 2002, plaintiff was selected as one of twelve contestants to go to the semifinals in New York, New York to compete for the prizes offered by the L.A. Models Defendants.

172.    Thereafter, by email and telephone, the L.A. Models Defendants contacted plaintiff and instructed her as to the next stage of the contest.

173.    At this time, the L.A. Models Defendants, their representatives and agents, including Erin Lundgren, continued to represent to plaintiff that she could win prize money, "guaranteed income" and an exclusive modeling contract, and that if she won the 2002 Contest, she would be entitled to $100,000.00 and/or "guaranteed income" of $100,000.00.

174.    On or about August 2, 2002, plaintiff attended and was selected as a finalist in the

New York Regional Competition, held in New York, New York. This entitled plaintiff to then proceed to the final stage of the contest.

175.    Model Jessica Stam also attended the Regional Competition, and was chosen to compete in the final competition.

176.    At all relevant times, prior to the New York Regional Competition, the L.A. Models Defendants neither presented a written agreement to plaintiff as to the contest, nor discussed any restrictions or conditions pertaining to the same.

177.    On or about August 26, 2002, only <u>one week</u> prior to the 2002 Contest, the L.A. Models Defendants forwarded to plaintiff a "packet" containing an eight page standardized agreement, with schedules attached, titled "L.A. Models/New York Model Management Agreement" ("2002 Model Management Agreement") .[1]

178.    In reliance upon the L.A. Models Defendants' prior inducements and promises of winning prize money and/or "guaranteed income" if she would enter the contest, and based upon a fear that failure to execute the agreement as presented would result in a refusal of the L.A. Models Defendants to honor the promises made, plaintiff Williams signed and forwarded the agreement to the L.A. Models Defendants on the day of the contest. Since plaintiff was under the age of 18 at the time, defendants required that plaintiff's adult guardian sign as well; as such, plaintiff's mother also signed the Agreement.

179.    On or about September 5, 2002, plaintiff Williams won the First Runner-up (Second Place) prize of $75,000.00.

---

[1]    Attached as <u>Exhibit "Q"</u> is a true copy of the Stam Agreement, which is identical in substance to the Agreement presented to plaintiff.

180.    Thereafter, plaintiff was offered and entered into an exclusive model management agreement with defendant N.Y. Models.

181.    At all relevant times, the L.A. Models Defendants repeatedly represented to plaintiff that she would "make a lot of money"; at various times after plaintiff won the contest, employees of defendants "Erin" and "Cory" promised plaintiff "we are going to book you so much" and "you are going to get so much work".

182.    At all relevant times, plaintiff was willing and available to work; plaintiff traveled to New York, as requested and as needed.

183.    However, in the months thereafter, plaintiff became discouraged and disillusioned with the L.A. Models Defendants; defendants' numerous promises of modeling work were not being fulfilled though no fault of plaintiff.

184.    The L.A. Models Defendants also failed to fulfill their promises to guarantee income and to pay plaintiff according to the "guaranteed" monthly payments set forth in the schedule to the parties' agreement.

185.    The L.A. Models Defendants also failed to fulfill their promises to adequately manage plaintiff's career. Examples include: defendants routinely sent plaintiff on pointless and inappropriate castings and assignments that failed to generate income; defendants were often unprepared; defendants would even borrow money from plaintiff; "photo sessions" were often wasteful, unproductive and resulted in no pictures for plaintiff's portfolio and/or no portfolio at all; defendants would often schedule only one casting per day; defendants sent plaintiff to a model competition in Brazil, yet failed to adequately supervise the event, in which plaintiff was severely injured when a glass runway collapsed; defendants failed to remedy the situation, failed to

33

compensate plaintiff for lost time, and even billed plaintiff for the resulting costs.

186.    During this time, and at all relevant times thereafter, plaintiff's parents spent considerable time and money to support her modeling career. As a result, plaintiff's parents and family incurred significant costs and expenses.

187.    Despite due demand, the L.A. Models Defendants have refused to pay plaintiff any of the contest prize money, and have failed to guarantee any income, as promised.

188.    At all relevant times, in 2002 through 2003, the L.A. Models Defendants used Williams, her image, etc., to promote their 2003 Contest. Upon information and belief, the L.A. Models Defendants continue to do so until the present.

### Facts Relevant to Plaintiff Miller

189.    Plaintiffs incorporate paragraphs "1" through "188", above by reference.

190.    In early 2001, plaintiff Miller "discovered" Jessica Stam, a young woman who Miller believed had great potential to succeed as a fashion model.

191.    In about October 2001, Stam and Miller entered into a mother agency agreement, pursuant to which the parties agreed that plaintiff would remained as Stam's Mother Agent throughout the world.

192.    At this time and thereafter, plaintiff invested significant time and energy into nurturing Stam's career and developing her potential as a model.

193.    In about February 2002, Miller introduced Stam to defendant N.Y. Models while in New York. N.Y. Models was immediately interested in Stam, and informed plaintiff of their interest.

194.    Miller, however, was hesitant to work with defendant N.Y. Models and declined the

34

Exhibit "Q"

Exhibit "Q"

30.03  01:27p                                                                    P.1

PLAINTIFF'S
EXHIBIT
10
JP        8.5.03

# L.A. MODELS/NEW YORK MODEL MANAGEMENT
## AGREEMENT

You, the "CONTESTANT," have been selected to participate in "The L.A. LOOK MODEL SEARCH – 2002" National Final (the "National Final") which is currently scheduled to be held during September 5, 2002 in New York. The winner of the National Final will be offered a two-year $100,000 modeling contract with L.A. MODELS/NEW YORK MODEL MANAGEMENT. The first runner-up will be offered a $75,000 two-year modeling contract from L.A. MODELS/NEW YORK MODEL MANAGEMENT. The second runner-up will be offered a $50,000 two-year modeling contract from L.A. MODELS/NEW YORK MODEL MANAGEMENT and the third runner-up will be offered a $25,000 two-year modeling contract from L.A. MODELS/NEW YORK MODEL MANAGEMENT.

In order for you to compete in the National Final, you must sign this agreement (the "Agreement").

1) General   This is an agreement between you and L.A. MODELS/NEW YORK MODEL MANAGEMENT. By signing this Agreement, you agree with L.A. MODELS/NEW YORK MODEL MANAGEMENT as follows:

2) Description of Prizes: National Final.

   (a) *First Place:*   L.A. MODELS/NEW YORK MODEL MANAGEMENT is offering a two-year modeling contract to the First place winner at the National Final, which contract provides a U.S. $100,000 guarantee of gross income for the First Place prize winner (subject to L.A. MODELS/NEW YORK MODEL MANAGEMENT'S commission, as described below). This guaranteed gross income is payable over a two-year period (see **Schedule A**). If you are the First Place winner and your gross income from modeling, on a cumulative basis, is less than the amounts shown on **Schedule A** hereto, then L.A. MODELS/NEW YORK MODEL MANAGEMENT shall advance you an amount equal to the cumulative shortfall; at the expiration of the Guaranty Period, to the extent the total received from gross income is less than $100,000, L.A. MODELS will pay you the difference between such amount and $100,000.

   (b) *First Runner- up:*  L.A.MODELS/NEW YORK MODEL MANAGEMENT is offering a two-year modeling contract to the First Runner-up prize winner at the National Final, which contract provides a U.S. $75,000 guarantee of gross income for the First Runner-up prize winner (subject to L.A.MODELS/NEW YORK MODEL MANAGEMENT'S commission, as described below). This guaranteed gross income is payable over a two-year period (see **Schedule B**). If you are the First Runner-up and your gross income from modeling, on a cumulative basis, is less than the amounts shown on **Schedule B** hereto, then

1

30 03 01:27p

L.A. MODELS./NEW YORK MODEL MANAGEMENT shall advance you an amount equal to the cumulative shortfall; at the expiration of the Guaranty Period, to the extent the total received from gross income is less than $75,000, L.A. MODELS will pay you the difference between such amount and $75,000.

(c) *Second Runner-up:* L.A. MODELS/NEW YORK MODEL MANAGEMENT is offering a two-year modeling contract to the Second Runner-up prize winner at the National Final, which contract provides a U.S. 50,000 guarantee of gross income for the Second Runner-up prize winner (subject to L.A. MODELS/NEW YORK MODEL MANAGEMENT'S commission, as described below). This guaranteed gross income is payable over a two-year period (see Schedule C). If you are a Second Runner-up and your gross income from modeling on a cumulative basis, is less than the amounts shown on Schedule C hereto, then L.A. MODELS/NEW YORK MODEL MANAGEMENT shall advance you an amount equal to the cumulative shortfall; at the expiration of the Guaranty period, to the extent the total received from gross income is less than $50,000, L.A. MODELS/NEW YORK MODEL MANAGEMENT will pay you the difference between such amount and $50,000.

(d) *Third Runner- up:* L.A. MODELS is offering a two-year modeling contract to the Third Runner-up prize winner at the National Final, which contract provides a U.S. $25,000 guarantee of gross income for the Third Runner-up winner (subject to L.A. MODELS/NEW YORK MODEL MANAGEMENT'S commission, as described below). This guaranteed gross income is payable over a two-year period (see Schedule D). If you are a Third Runner-up and your gross income from modeling on a cumulative basis, is less than the amounts shown on Schedule D hereto, then L.A. MODELS/NEW YORK MODEL MANAGEMENT shall advance you an amount equal to the cumulative shortfall; at the expiration of the Guaranty period, to the extent the total received from gross income is less than $25,000, L.A. MODELS/NEW YORK MODEL MANAGEMENT will pay you the difference between such amount and $25,000.

By execution of this Agreement, you agree with L.A MODELS/NEW YORK MODEL MANAGEMENT that if you are selected as the First place prize winner, First Runner-up, Second Runner-up or Third Runner-up at the National Final, you will accept a two-year modeling contract with L.A. MODELS/NEW YORK MODEL MANAGEMENT on the terms set forth herein:

(a) <u>Term.</u> Unless otherwise agreed upon in writing, the modeling contract shall commence two months after your selection as First place prize winner, First Runner-up, Second Runner-up, or Third Runner-up and terminate two years

2

30 03 01:27p                                                                    p.3

thereafter (unless this Agreement shall be sooner terminated in accordance with terms hereof).

(b) <u>Representation.</u>  During the term of the modeling contract you agree to be represented by L.A. MODELS/NEW YORK MODEL MANAGEMENT and its affiliates throughout the world.   You agree that L.A. MODELS/NEW YORK MODEL MANAGEMENT shall be your exclusive representative as a print, television, runway model or otherwise on an exclusive basis except in a market where a mother agency agreement with L.A MODELS/NEW YORK MODEL MANAGEMENT exists.  In connections with such representation, L.A. MODELS/NEW YORK MODEL MANAGEMENT and its affiliates will charge you a 20% commission (except in countries where standard percentages in the modeling industry are different), which commission will be deducted from your gross income in the manner normally followed by L.A. MODELS/NEW YORK MODEL MANAGEMENT or its affiliates, as the case may be, with respect to its or their models.  L.A. MODELS/NEW YORK MODEL MANAGEMENT and its affiliates may also deduct from your net income any other amounts to be reimbursed to L.A. MODELS/NEW YORK MODEL MANAGEMENT or its affiliates by the CONTESTANT (e.g. accommodation costs, trip fare, tests, printing, promotion, etc.).

(c) <u>Availability.</u>  Unless otherwise agreed upon in writing between you and L.A. MODELS/NEW YORK MODEL MANAGEMENT, you agree to make yourself available in Los Angeles and New York or any such other place as L.A. MODELS/NEW YORK MODEL MANAGEMENT may designate to commence work as print, television, runway model or otherwise at all times in 2002 after your selection as First place prize winner, First Runner-up, Second Runner-up or Third Runner-up at the National Final.

(d) <u>Commission.</u>  L.A MODELS/NEW YORK MODEL MANAGEMENT will charge its customary commission (as described in subsection (b) hereof) on all income earned by you after the termination or expiration of this Agreement in respect of contracts negotiated or assignments booked during the term hereof.  In the event that this Agreement has expired or is about to expire, you agree that L.A. MODELS may continue to represent you with respect to negotiations or transactions commenced by it on your behalf prior to the expiration of this Agreement.   L.A. MODELS/NEW YORK MODEL MANAGEMENT shall continue to represent you pursuant to the terms of this Agreement after the initial term unless either you or L.A. MODELS/NEW YORK MODEL MANAGEMENT give the other thirty (30) days written notice, but without any guarantee of income after the term of this Agreement has ended.

3

30 03 01:28p                                                                                    p.4

(e) <u>Voucher System.</u> L.A. MODELS/NEW YORK MODEL MANAGEMENT provides advances to its models in respect of their client vouchers (vouchers are releases that clients and models sign showing that the model has worked for them). Royalties and advertising product bookings are paid to the models only after their payment by the client. You understand and agree that the risk of collection of all amounts advanced to you pursuant to vouchers is borne by you and that you own such vouchers. In the event that a client does not pay a voucher after L.A. MODELS/NEW YORK MODEL MANAGEMENT has advanced you money against amounts it, L.A. MODELS/NEW YORK MODEL MANAGEMENT may deduct any amounts it is unable to collect from the client against amounts which would be due to you from vouchers in the future, or L.A. MODELS/NEW YORK MODEL MANAGEMENT, in lieu thereof, may require you to repay such amounts to it. For purposes of computing commissions, commissions will be earned by L.A. MODELS/NEW YORK MODEL MANAGEMENT on all income received by you from modeling, acting, television or otherwise throughout the world. Such commissions may be collected by subsidiaries or affiliates of L.A. MODELS/NEW YORK MODEL MANAGEMENT where applicable. L.A. MODELS/NEW YORK MODEL MANAGEMENT reserves the right to change the method of payment of coincide with the accounting system in effect when a model activates this contract.

(f) <u>General.</u> The decision as to the use of a particular model is made by clients; therefore, L.A. MODELS/NEW YORK MODEL MANAGEMENT cannot guarantee and makes no guarantee of representation as to the type or number of modeling assignments that you will receive as a result of this Agreement or any affiliation with L.A. MODELS/NEW YORK MODEL MANAGEMENT. This is a guaranty of income, not employment. L.A. MODELS/NEW YORK MODEL MANAGEMENT is not an "employment agency" and is not licensed as such in any jurisdiction. L.A. MODELS/NEW YORK MODEL MANAGEMENT guarantees a certain gross income but has not promised or represented that it will obtain employment or engagements for you.

3) <u>Agreements of Contestant.</u>
   (a) You understand that L.A. MODELS/NEW YORK MODEL MANAGEMENT is guaranteeing the Frist prize winner, Frist Runner-up, Second Runner-up and Third Runner-up income from his/her proposed career as a professional print, television, runway model or otherwise. This guaranty is premised upon execution of this Agreement and presumes that you shall at all times during the term of this Agreement be ready, willing and able to work as a professional print, television, runway model or otherwise, and will conduct yourself, groom yourself and maintain your appearance (including weight, skin condition, hair style, etc.) in a manner so as not to interfere with the possibility of your obtaining employment as a model.

'03 01:29p

(b) In order to work as a model, you may be required to travel. This travel may involve going on locations or residing temporarily in cities where L.A. MODELS/NEW YORK MODEL MANAGEMENT has modeling assignments for you. If you are unable or unwilling to travel in this manner or accept such assignments you should not execute this Agreement or accept L.A. MODELS/NEW YORK MODEL MANAGEMENT'S guaranty.

(c) During the term of the Agreement (including any extensions thereof pursuant to this Agreement), you agree not to be represented by any agency or model management company other than L.A. MODELS/NEW YORK MODEL MANAGEMENT, its subsidiaries or affiliates, unless written consent is given by L.A. MODELS/NEW YORK MODEL MANAGEMENT. You hereby agree that you are not under any other modeling contract or, if so, any and all contracts must be terminated before the term of the agreement with L.A. MODELS/NEW YORK MODEL MANAGEMENT unless an existing mother agency agreement with L.A. MODELS/NEW YORK MODEL MANAGEMENT is present.

(d) You agree to refrain from engaging in any activities which offend the public morals, embarrass L.A. MODELS/NEW YORK MODEL MANAGEMENT or violate the law of any jurisdiction. The breach of one or more of the covenants contained in this paragraph 3 after written warning of L.A. MODELS/NEW YORK MODEL MANAGEMENT to you will be grounds for termination of this Agreement and the guaranty hereunder.

4) <u>Availability of Contestant.</u>  In the event that you are unavailable for modeling assignments for any reason, (including, but not limited to, illness), the term of the Agreement may, at L.A. MODELS/NEW YORK MODEL MANAGEMENT'S option, be extended for the period of your unavailability and the amount of time during which you were unavailable will be added (along with the corresponding guaranty of L.A. MODELS/NEW YORK MODEL MANAGEMENT) to the end of the term of the Agreement. During the period of your unavailability the obligation of L.A. MODELS/NEW YORK MODEL MANAGEMENT to pay any amounts guaranteed hereunder shall be suspended.

In the event that L.A. MODELS/NEW YORK MODEL MANAGEMENT, in its sole but reasonable professional opinion, determines at any time (including, but not limited to, any period in which you are enrolled in a "high school" or similar school) that you have become excessively overweight or your appearance has materially altered such that you, in the professional opinion of L.A. MODELS/NEW YORK MODEL MANAGEMENT, are no longer able to model professionally, then at the option of L.A. MODELS/NEW YORK MODEL MANAGEMENT, upon written notice to you, this Agreement and the guaranty hereunder may be suspended by L.A. MODELS/NEW YORK MODEL MANAGEMENT. During the period of such

suspension L.A. MODELS/NEW YORK MODEL MANAGEMENT will not be required to make any payments to you, but the term of the Agreement shall be extended for a length of time equal to the suspension. If within sixty (60) days after L.A. MODELS/NEW YORK MODEL MANAGEMENT has given you notice of such suspension, you have not corrected the problem identified in such notice, this Agreement and the guaranty hereunder may be terminated upon three (3) days written notice, with no cost to or further obligation of L.A. MODELS/NEW YORK MODEL MANAGEMENT.

In the event that you decide to terminate your modeling career before the expiration of your two-year contract, for any reason whatsoever, then you will be individually and legally responsible to reimburse L.A. MODELS/NEW YORK MODEL MANAGEMENT for any and all payments advanced to you or made to any person in your name to the extent you have not earned such payments.

5) <u>High School Graduation.</u> In the event that you have not graduated from "high school" before the completion of the National Final and choose to continue your education, you may, at your option, decide to begin your modeling career under this Agreement and with the guaranty of income by L.A. MODELS/NEW YORK MODEL MANAGEMENT upon graduation from high school to commence your modeling career. Prior to such commencement you shall receive no payments under the Agreement. During the period that your guaranty of income would be suspended under this Section, if you choose to continue your education, you may model for any local agency (except in cities where L.A. MODELS/NEWYORK MODEL MANAGEMENT has a model management company or agency, affiliate or subsidiary).

6) <u>Use of Name, Photo and Likeness.</u> You authorize L.A. MODELS/NEW YORK MODEL MANAGEMENT, and its affiliates and designees to use without charge, your name, biographical data, photographs, voice and likeness in any and all media for so long as they desire in connection with advertising and promotion of L.A. MODELS/NEW YORK MODEL MANAGEMENT, modeling contests and for other purposes that they determine.

7) <u>Remedies.</u> You agree that any and all rights and remedies which you may have in the form of a breach of any provision of this Agreement shall be limited to recovery of actual damages in an action at law.

8) <u>Equitable Relief.</u> You understand and acknowledge that as a prize winner in the National Final, your services and value to L.A. MODELS/NEW YORK MODEL MANAGEMENT are extraordinary and not compensable by money damages in the event of a breach of this Agreement or any provision of such Agreement. Therefore, you agree that in the event of any breach or threatened breach by you, L.A.

6

MODELS/NEW YORK MODELS may apply to any court of competent jurisdiction for injunctive or other equitable relief.

9) Execution by a Minor.  In the event the CONTESTANT is under 18 years of age, your parent or guardian is required to execute this Agreement on your behalf.

10) Assignment.  This Agreement may not be assigned by any party hereto except that L.A.MODELS/NEW YORK MODEL MANAGEMENT may designate, from time to time, one or more of its subsidiaries or affiliates to help the CONTESTANT  in the pursuit of her career.

11) Governing Law.  This Agreement shall be governed and construed in accordance with the laws of the State of California in the United States of America.

12) Modification.  This Agreement may not be changed or modified except in writing executed by the parties hereto.

Dated: 9/10/02     L.A MODELS/NEW YORK MODEL MANAGEMENT
By: _Marlent Smtt_

Dated: Sept 5 02.     CONTESTANT
Signature: _Jessica Sham_

*Insurance*
Social Security Number: ████ ██ ████
Dated: 9/5/02 PARENT OR GUARDIAN (If contestant is under 18 years of age)
Signature: _Debbie Stam_
Relationship: _mother_

7

60 03 01:32p                                                         p. 8
05/2002  15:41    5193955753                              PAGE  02
08.03/02  10:21 FAX  212 599 1776        R&DSTAM
                               NEW YORK MODEL MGT

## THE L.A. MODEL/NEW YORK MODEL MANAGEMENT –
## PARENT OR GUARDIAN AFFIDAVIT
(Must be completed on behalf of any contestant under 18 years of age)

I, *Debbie Stam* _____, am the parent or legal guardian of *Jessica Stam* _____, a contestant in "THE L.A. LOOK MODEL SEARCH – 2002" National model competition. I have read the accompanying "THE L.A. MODEL/NEW YORK MODEL MANAGEMENT" agreement and hereby give my consent to the participation by *Jessica Stam* _____ in "The LA MODEL/NEW YORK MODEL MANAGEMENT" agreement on the terms and conditions in such agreement.

Signature: *Debbie Stam*

Address: ▓▓▓ ▓▓▓▓▓▓▓, Ontario, Canada, N2Z 2X5

Phone Number: (▓▓▓) ▓▓▓ - ▓▓▓▓

1st Place
Winner
$100,000   Jessica
Stam

8

Exhibit I   Exhibit J

# Schedule A
## Guaranteed Minimum Gross Income

| Month | Amount |
|-------|--------|
| 1 | 1,125 |
| 2 | 1,125 |
| 3 | 1,125 |
| 4 | 1,500 |
| 5 | 1,500 |
| 6 | 1,500 |
| 7 | 1,875 |
| 8 | 1,875 |
| 9 | 1,875 |
| 10 | 2,250 |
| 11 | 2,250 |
| 12 | 2,250 |
| 13 | 2,625 |
| 14 | 2,625 |
| 15 | 2,625 |
| 16 | 3,000 |
| 17 | 3,000 |
| 18 | 3,000 |
| 19 | 3,375 |
| 20 | 3,375 |
| 21 | 3,375 |
| 22 | 3,750 |
| 23 | 3,750 |
| 24 | 3,750 |

In addition, the Model will be guaranteed an additional $41,500 to be paid upon expiration of the Guaranty Period, as per paragraph 2.

Exhibit K    Exhibit L

Exhibit I    Exhibit J