UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CAITLIN WILLIAMS, et al,                    Case No.: 07 Civ. 06778 (NRB)

                Plaintiff,

    -against-

L.A. MODELS, INC.; NYC MANAGEMENT
GROUP, INC., d/b/a NEW YORK MODEL
MANAGEMENT,
                Defendants.
---------------------------------------------------------------X


# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Anthony A. LoPresti, Esq.
MELTZER LoPRESTI, LLP
30 Broad Street, 37th Floor
New York, New York 10004
Ph.: (212) 425-0551
fax: (212) 658-9001

*Attorneys for Plaintiff*

Plaintiff submits this Memorandum of Law in opposition to the motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), of defendants L.A. MODELS, INC. ("LA Models") and NYC MANAGEMENT GROUP, INC. ("NY Models")(collectively, "the LA Models Defendants").

**PRELIMINARY STATEMENT**

The LA Models Defendants, modeling agencies that ran nationwide annual modeling contests, argue that plaintiff's case is yet another failed attempt by a young contestant to assert claims by reason of the contests. Here, plaintiff Williams was First Runner-Up winner of the 2002 L.A. Look Model Search Contest ("the Contest" or "2002 Contest"). Defendants continually refer to the underlying litigation involving three other contest winners from the 2001 contest, asserting that this is but one more frivolous lawsuit. Regardless, over 3 years later, with three plaintiffs having settled their actions with the defendants, defendants have yet to explain with any credulity why these four contestants, along with numerous others, just never seem to get paid their prize money, or work for that matter.

Notwithstanding the various factual differences between this instant action and the underlying lawsuit, defendants have also failed to acknowledge plaintiff Williams' status as a minor (14 years old) when the 2002 Contest was held, as pled clearly in her complaint. Such is black letter law in most states, including California and New York, that this disability tolls the statute of limitations. As such, any argument that this action is untimely should be disregarded. Moreover, argument that this is the same case as the other three plaintiffs and that this Court's prior decision applies exactly to this matter is again misleading and ignores the facts pled clearly herein. Defendants finally compensate for lack of credible argument by ranting about the press

1

this case has apparently garnered, as if the undersigned has the power to control the press.1   For the reasons set forth below, defendants' motion must be denied.  Defendants have not answered in this action and no discovery has commenced; this case is in its nascent stage.  In the alternative, Plaintiff seeks leave to amend her complaint pursuant to Rule 15(a) to cure any alleged deficiencies.

## STATEMENT OF FACTS

The facts relevant to this motion are set forth in greater detail in plaintiff's Complaint, dated June 20, 2007, and the Court is respectfully referred thereto.  Plaintiffs do not dispute the copy of the written agreement between the parties at issue produced by the defendants as Exhibit "1".  Defendants also cite to this Court's Opinion and Order in the underlying case of *Bezuszka, et al. v. L.A. Models, Inc., et al.,* dated March 24, 2006 (hereinafter referred to as the "3/24/06 Order").

## ARGUMENT

When ruling on a 12(b)(6) motion, a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken," *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993), and must take all allegations in the complaint as true and draw all reasonable factual inferences in favor of the plaintiff.  *Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir. 1989).  A complaint may be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

---

1   The undersigned vehemently objects to counsel for defendants' repeated assertions of intentionally "fueling" the press as outright fabrications where no media attention whatsoever was initiated by the undersigned, plaintiff or any representatives of plaintiff, directly or indirectly upon the filing of this action. Counsel for defendants is well aware of that fact yet continues to attempt to agitate this Court and detract from the merits of this action.

2

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).

**Point I**

**DEFENDANTS' ASSERTIONS THAT
THIS ACTION IS UNTIMELY IS INCORRECT**

Defendants' lengthy argument that all of plaintiff's claims are barred by the statute of limitations fails for a very simple reason. As pled clearly in plaintiff's Complaint, Ms. Williams was only 14 years of age, a minor, when she won the Contest in 2002 (para. 5). Despite counsel for defendants' apparent oversight, a basic tenet of the laws of most if not all states is that while a potential plaintiff is a minor, the statute of limitations is tolled. This is particularly the case in both New York and California law. *See* N.Y. C.P.L.R. § 208; C.A. C.C.P. §§ 350-363. Such is the reason plaintiff pled this fact in the opening paragraphs of her Complaint. ("At the time of the Contest, Williams was a minor, age 14"; para. 5). As a result, when plaintiff turned 18 on November 14, 2005, she had more than ample time to bring claims on any of the theories propounded herein under either New York or California law. Both New York and California laws are as follows:

> CALIFORNIA CODE OF CIVIL PROCEDURE
> SECTION 350-363
> 350. An action is commenced, within the meaning of this Title, when the complaint is filed.
> .....
> 352. (a) If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action.

NY CPLR 208 provides in pertinent part:

3

> If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and * * * if the time otherwise [limited for commencing the action] is less than three years, the time shall be extended by the period of disability.

Defendants' motion seeking dismissal on statute of limitations grounds should be denied in its entirety.

**Point II**

**DEFENDANTS' ASSERTIONS AS TO CHOICE OF LAW AND LIMITATIONS OF LIABILITY ARE INCORRECT**

**A.    California Law Does Not Necessarily Apply**

Defendants assume that California law applies to this action based upon a choice of law provision buried within the terms of the written agreements. However, even assuming *arguendo* that such limitations may be upheld, under New York law a contractual choice of law provision governs only a cause of action sounding in contract, not one sounding in tort. Courts may clearly apply separate state laws to separate causes of action. *See e.g. Hutner v. Greene*, 734 F.2d 896, 899-901 (2d Cir.1984) (New York law applied to contract issue, California law applied to regulatory issue); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 121 (2d Cir.1984) (New York law applied to both contract and tort issues, but separate choice-of-law analysis was conducted); *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989)("a contractual choice of law provision governs only a cause of action sounding in contract"). In *Rosenberg* the court applied New York law to the contract claim (where a choice of law provision existed within the contract), but applied Massachusets law to plaintiff's fraud claim, where "the locus of the alleged fraud was Massachusetts". *Id*. at 1150; *see also Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2d Cir. 1997)(affirming

4

*Rosenberg*).

A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law (*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 [2d Cir. 2000]), and in New York, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws. *Matter of Allstate Ins. Co. & Stolarz*, 81 N.Y.2d 219, 613 N.E.2d 936, 597 N.Y.S.2d 904 (N.Y. 1993). In tort actions in which there is a conflict of laws, New York courts apply an "interests analysis" under which the substantive law of the jurisdiction having the greatest interest in the litigation applies. *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992). Generally, when a choice-of-law issue relates to laws regulating conduct, the location of the tort determines the applicable law. *Id.*

Here, the 2002 Contest was held in New York, plaintiff had entered the regional finals in New York, and the operative model agency contract was with defendant NY Models, a New York corporation. Further, all performance of the contract at issue was from New York, while injury resulting from the acts, omissions and wrongful conduct of defendants occurred substantially in New York as well. The following facts also confirm that an interests analysis mandates application of New York law: the majority of individuals employed by defendants to promote the contests, manage the contests, perform the terms of the contests, represent and conduct business with plaintiffs were located in the City and State of New York; defendants promoted the contests and solicited contestants in the City and State of New York; plaintiff was solicited and contacted by NY Model employees/ agents. Further, it is worthy of note that the LA Models Defendants declined to pursue a motion for a change of venue in this instant action,

5

and have effectively waived any right to assert such relief.

**B.    Defendants May Also Be Estopped from Asserting a Contractual Limitation of Damages If they Have Acted in Bad Faith**

Contrary to defendants' assertions, plaintiff may assert a claim for punitive damages. As stated in this Court's 3/24/06 Order "both California and New York require that an independent tort be alleged in order to support a claim for punitive damages arising out of a breach of contract." (pg. 28)(*citing Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 869 P.2d 454, 460 (Cal. 1994); *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767-68 (1995). Here, as set forth below, plaintiff has pled a viable cause of action for fraud/intentional misrepresentation.

In New York courts have held that even if a limitation of liability clause is not unconscionable, a defendant may be estopped from asserting a contractual limitation of damages if the defendant has acted in bad faith. *See, e.g. Long Island Lighting Co. v. Transamerica Delaval*, 646 F. Supp. 1442, 1458 (S.D.N.Y. 1986); *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 323 F. Supp 1300, 1308 (S.D.N.Y 1970), aff'd, 444 F.2d 372 (2d Cir.), cert. denied, 404 U.S. 939 (1971); *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5; 465 N.Y.S.2d 606 (4th Dept. 1983); *Proto Construction & Development Corp. v. Superior Precast, Inc.*, 2002 U.S. Dist. LEXIS 10072 (E.D.N.Y. 2002). New York courts have held that such a clause may not be invoked to insulate a party from liability for the consequences of willful misconduct in performing its obligations under a contract, and such a clause may not be invoked to insulate a party from liability for the consequences of willful misconduct in performing its obligations under a contract. A. Corbin, Corbin on Contracts §§ 1068, 1472 (1982); *Ally*

*Gargano/MCA Advertising, Ltd. v. Cooke Properties, Inc.*, 1989 U.S. Dist. LEXIS 12245 (S.D.N.Y. 1989)("This legal exception to parties' freedom to contract, thought necessary to uphold accepted notions of public morality and policy, is firmly embedded within New York's law of contracts", citing *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-85, 461 N.Y.S.2d 746 (1983); *Modern Settings, Inc. v. American District Telegraph Co.*, 121 A.D.2d 266, 269, 503 N.Y.S.2d 44, 46 (2d Dept. 1986); *Mokar Properties Corp. v. Hall*, 6 A.D.2d 536, 179 N.Y.S.2d 814, 819-20 [1st Dept. 1958]).

As per *Ally Gargano/MCA Advertising, Ltd. ,* "in New York 'the policy which condemns such conduct is so firm that even when, in the . . . framing of a particular exculpatory clause, it is determined . . . that the conduct sought to be exculpated was within the contemplation of the parties, [the clause] will be unenforceable. . . .'" . Id., at 26 (quoting *Kalisch-Jarcho*, 58 N.Y.2d at 384-85)(the estoppel doctrine "precludes a defendant who has acted in bad faith from asserting the protection of contractual provisions it would otherwise be entitled to receive"). As set forth herein, plaintiff has plead and asserted tortious actions and omissions by defendants. Defendants must not be permitted to benefit from such wrongful conduct.

### Point III

**PLAINTIFF'S COUNT I (BREACH OF CONTRACT)
AND COUNT II (BREACH OF MOTHER AGENCY AGREEMENT)
ADEQUATELY STATE CLAIMS FOR RELIEF**

Defendants cite to and rely significantly on this Court's 3/24/06 Order for the proposition that all of plaintiff's causes of action should be dismissed. Assuming *arguendo* that the 3/24/06 Order is completely applicable to plaintiff's action, both causes of action sounding in breach of the model contest agreements and breach of the agency agreements have already withstood

7

dismissal and were eventually settled as to all remaining plaintiffs. Here, plaintiff Williams does state similar claims (First and Second causes of action), however, she includes additional allegations, as set forth below. Without belaboring the argument, plaintiff respectfully refers the Court to her Complaint and the various attachments of promotional and press materials generated by the defendants. As in the underlying action, plaintiff received nothing and "defendants have failed and/or refused to honor the contest's promises, without any cause or justifiable reason".

In addition, the defendants also failed to fulfill their promises to adequately manage plaintiff's career as her "mother agent". (Comp., para. 37). Examples include: defendants routinely sent plaintiff on pointless and inappropriate castings and assignments that failed to generate income; defendants were often unprepared; defendants would even borrow money from plaintiff; "photo sessions" were often wasteful, unproductive and resulted in no pictures for plaintiff's portfolio and/or no portfolio at all; defendants would often schedule only one casting per day. *Id.* Plaintiff also alleges that "in one instance, defendants sent plaintiff to a model competition in Brazil, yet failed to adequately supervise the event. Plaintiff was then severely injured when a glass runway collapsed. Defendants, however, failed to remedy the situation, failed to compensate plaintiff for lost time, and even billed plaintiff for the resulting costs." (para. 38). Plaintiff has adequately pled all elements for both counts of breach of contract.

Based upon the Court's 3/24/06 Order alone, plaintiff has sufficiently plead her First and Second causes of action and defendants' motion to dismiss those causes must be denied. Plaintiff's causes of action sounding in quantum meruit (Third cause of action), fraud /intentional misrepresentation (Fourth cause of action), and constructive trust (Fifth cause of action), must also stand based upon the following.

**Quantum meruit:** Despite the initiation of this litigation in November 2004, defendants only now have produced the signed, written agreement at issue herein (Defendant's Exhibit "1"), of which plaintiff does not contest. Plaintiff withdraws its quantum meruit claim (Third cause of action).

**Constructive trust:** As stated in this Court's 3/24/06 Order "Although California courts do not impose precisely the same requirements to state a claim for a constructive trust, a California plaintiff is 'not entitled to relief under a constructive trust theory' if he 'did not allege facts showing any **fraud** or breach of any fiduciary duty.' (pg 48; emphasis added)(*citing Michaelian v. State Comp. Ins. Fund,* 50 Cal. App. 4th 1093, 1114, 58 Cal. Rptr. 2d 133, 147 (Cal. Ct. App. 1996). Here, as set forth below, plaintiff has plead a viable cause of action for fraud/intentional misrepresentation.

**Point IV**

**PLAINTIFFS' COUNT IV (FRAUD/INTENTIONAL MISREPRESENTATION) MUST NOT BE DISMISSED**

Defendants assert that plaintiff's claims for fraud/intentional misrepresentation are identical to the plaintiffs in the underling action, and as such, based upon this Court's 3/24/06 Order, should be dismissed. However, defendants fail to acknowledge several significant differences that form the basis for plaintiff's fraud claim.

**Plaintiff's Contract Claims Do Not Preclude Her Fraud Claim**

As stated in this Court's 3/24/06 Order, both New York and California law provide that a breach of contract claim may not be plead as fraud absent evidence of an independently tortious act (pg. 33)(*citing, e.g., Harris v. Atlantic Richfield Co.*, 14 Cal. App. 4th 70, 78, 17 Cal. Rptr. 2d

9

649, 654 (Cal. Ct. App. 1993)("when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort"); *Bridgestone/Firestone, Inc. v. Recovery Credit Sys., Inc.,* 98 F.3d 13 (2d Cir. 1996)("a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract . . . or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."). As stated by this Court in the underlying case, "[h]ere, the Complaint makes no allegation of fraud independent of the contract." (pg 33). However, here, plaintiff Williams has plead several allegations of fraud separate from the written contracts at issue. Moreover, as set forth below, plaintiff has plead them with particularity.

  Plaintiff has pled the following for her Fourth cause of action:

  (1) plaintiff alleges that the Contest was in fact fraudulently fixed, in that despite defendants' promises and inducement that she could win first prize, defendants had predetermined that Jessica Stam would win, a Canadian model and resident ineligible to enter the Contest pursuant to its own rules. Plaintiff, rather, was awarded second place (Comp. paras. 20-22, 25, 27, 55, 74);

  (2) plaintiff alleges that she was induced to pay an upfront fee and monthly payments as a prerequisite to entering the Contest, a practice specifically deemed "deceptive" and misleading by the New York State Consumer Protection Board ("CPB")(Comp. paras. 17, 18, 48, 74; See Exhibit "C" to Complaint); and

  (3) plaintiff alleges that defendants intentionally deceived her that they were still affiliated with "LA Looks" the worldwide hair care products corporation, when in fact they were

10

not. Rather, defendants co-sponsored the 2002 Contest with a partner known as "Web Style Network", which was issued a warning in April 2004 operating as "Trans Continental Talent" by the New York State Consumer Protection Board ("CPB") for deceptive trade practices in operating similar contests. (Comp. paras. 46-48; See Exhibit "C" to Complaint). Based upon the above facts as alleged, which (i) demonstrate a fraudulent misrepresentation collateral or extraneous to the written contracts at issue (ii) evidence tortious acts separate and independent from the written contracts and (iii) require special damages caused by the misrepresentations that are unrecoverable as contract damages, plaintiff may indeed plead fraud concurrently with her contract claims. In addition, as set forth below, plaintiff has plead fraud with particularity as required by FRCP Rule 9(b).

**Plaintiff Has Plead Fraud With Requisite Particularity**

As stated in this Court's 3/24/06 Order, in order to satisfy the requirements of FRCP Rule 9(b), a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (pg. 33)(*citing Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993). Here, plaintiff has indeed stated her claim with the requisite particularity through allegations contained in her complaint and as per attached exhibits.

Plaintiff alleges that defendants made such fraudulent representations both in person and via "promotions, solicitations and the rules posted by the defendants" (*e.g.,* para. 20). Plaintiff also includes promotional representations as exhibits (Exh. "A" and "B"), which are incorporated by reference. Plaintiff alleges:

> At this time, due to promotions, solicitations and the rules posted by the defendants, plaintiff believed that the contest was only open to U.S. residents.

11

>Defendants solicited potential contestants, which were required to be "U.S. legal residents, between the ages of 12-24", inviting them to enter the contests via entry forms or at "local events" held in stores and malls nationwide. As explained in a 2001 press release:

>"From February to May, the contest was open to male and female U.S. legal residents, between the ages of 12-24. Contestants could enter at local events in over 30 cities nationwide, or via mail-in entry forms available at participating retail outlets, in Teen People, Cosmo Girl, Seventeen or on the web at www.lalooks.com"

Exhibit "B".2

Plaintiff also alleges that specific individuals (*e.g.,* "defendants, their representatives and agents, including Erin Lundgren"), represented at the time she entered the Contest "that if she won the 2002 Contest, she would be entitled to $100,000.00 and/or "guaranteed income" of $100,000.00". (*e.g.,* para. 25). However, despite these representations, and despite the published rules of the Contest, defendants still permitted a Canadian working model, Jessica Stam, who was neither a U.S. citizen, nor a U.S. resident eligible to work in the U.S. to enter and win. (Comp. paras. 20-22, 25). Moreover, as alleged by plaintiff, Stam, "who had not competed in any of the local competitions, was now permitted by the defendants to enter the New York Regional Competition, where she was then chosen by the defendants to advance to the final competition, along with plaintiff." (para. 27). As alleged by plaintiff, defendants permitted Stam to bypass the local competitions, a requisite for all other models. Plaintiff alleges further that "upon information and belief, at the time defendants entered into agreements with plaintiff Williams, defendants knew that Stam would win the 2002 Contest, despite the fact that Stam was

---

2  Interestingly, a model contest that defendants currently sponsor now states in its rules the following: "CONTEST IS OPEN TO female residents of the U.S. and Canada, ages 13 (as of 3/1/2008) to age 24 (as of 11/15/2007). Contestants who have performed modeling services for other agencies are eligible to enter; however, contestants who have earned more than $25,000 in modeling fees in any one-year are considered ineligible to enter, win or receive a prize." See http://www.soyouwanttobeamodel.com/prizes.asp

ineligible to enter the 2002 Contest." (para. 55).

As stated above, plaintiff also alleges that she was induced to pay upfront fees and monthly payments to enter the Contest, a practice specifically deemed "deceptive" and misleading by the New York State CPB (Comp. paras. 17, 18, 48, 74; Exhibit "C").  Plaintiff alleges specifically that in Spring, 2002, she was "approached at school by a talent scout for Options Talent, Inc. ("Options Talent"), a co-partner with defendants L.A. Models and N.Y. Models in the 2002 Contest.  The scout solicited plaintiff to sign with Options Talent and to enter the "L.A. Look" model contest". (para. 17).   Plaintiff alleges that she "was interviewed by employees/agents of Options Talent, and was told that in order to sign with them and enter the Contest, she was required to pay dues.  Thereafter, plaintiff paid Options Talent $600.00 to sign, with monthly payments of $19.95 per month thereafter." (para. 18).  Paying fees to enter the 2002 Contest was not a part of or requirement of the written agreement at issue.  In addition, plaintiff alleges that defendants intentionally deceived her that they were indeed affiliated with "LA Looks", despite the fact that the Henkel Corporation, d/b/a "LA Looks" (a party to the underlying action), chose to abruptly end their relationship and affiliation with the defendants.  Rather, an organization known as Web Style Network co-sponsored the 2002 Contest along with the defendants.  As alleged by plaintiff:

> In April 2004, the New York State Consumer Protection Board ("CPB") issued a warning about Trans Continental Talent, formerly known as Web Style Network, for certain deceptive trade practices, including (i) charging up front fees to enter a model contest; and (ii)  representing that it guarantees modeling contracts, specifically, that it "advertises 'more than $100,000 in contracts' to winners". See *Nationwide Fashion and Talent Competition Offers Prize "Contracts" But No Work For Contest Winners*, NYS CPB, April 19, 2004, Exhibit "C".

Comp. at para. 47.

13

Plaintiff alleges further:

75.     That, upon information and belief, defendants made such knowing misrepresentations with the intent of fraudulently inducing plaintiff, like contestants and aspiring models, into entering into an exclusive agreement with defendants for services as models, and to prevent plaintiff, like contestants and aspiring models, from entering into agreements with any other modeling agencies.

79.     That plaintiff relied upon defendants' misrepresentations, to her detriment.

80.     That plaintiff did rely upon defendants' misrepresentations and promises by, among other things, forgoing educational opportunities, foregoing entering into employment with other model agencies, foregoing other career goals, and incurring significant costs and expenses.

Plaintiff has plead her claim for fraud/intentional misrepresentation with requisite particularity: (1) she has specified fraudulent statements; (2) she has identified the persons and publications from which the statements originated; (3) she has stated where and when the statements were made, and (4) she has explained why the statements were indeed fraudulent.

### Point V

### IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO REPLEAD

Generally leave to replead "shall be freely given when justice so requires" (Fed. R. Civ. P. 15[a]), and in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)("it is the usual practice upon granting a motion to dismiss to allow leave to replead"); *Conley* v. *Gibson*, 355 U.S. 41, 48; 78 S. Ct. 99, 103 (1957)("the Federal Rules reject the approach that pleading is a game of skill in

which one misstep . . . may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits"). In the alternative, plaintiff respectfully requests that leave to replead be granted.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss must be denied in its entirety. In the alternative, Plaintiff should be granted leave to replead pursuant to Rule 15(a).

Dated: New York, New York
February 18, 2008

        MELTZER LoPRESTI, LLP

By:   __/s/_____
      Anthony A. LoPresti

      30 Broad Street, 37th Floor
      New York, New York 10004
      Ph.: (212) 425-0551
      Fax: (212) 658-9001

      Attorneys for Plaintiff