UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
CAITLIN WILLIAMS,

                    Plaintiff,

          - against -                        **MEMORANDUM AND ORDER**

L.A. MODELS, INC. and NYC MANAGEMENT          07 Civ. 6778 (NRB)
GROUP, INC., d/b/a NEW YORK MODEL
MANAGEMENT,

                    Defendant.
-------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


     Plaintiff Caitlin Williams was the "First Runner-up" at the
"L.A. Look Model Search - 2002" (the "2002 Contest"). The 2002
Contest was sponsored by defendants, two "sister" modeling
agencies, NYC Management Group, Inc., d/b/a New York Model
Management and L.A. Models, Inc. (collectively the "L.A. Models
defendants" or "defendants"). For finishing second, Williams
received a two-year modeling contract with the L.A. Models
defendants that included "guaranteed income" of $75,000.

     Williams brings this suit alleging that the L.A. Models
defendants never met the guaranty, failed to adequately manage her
modeling career, and caused her and her family other hardships.
She seeks compensatory and punitive damages.

     Williams was previously a plaintiff in a related case,
Bezuszka et al. v. L.A. Models, Inc. et al., 04 CV 07703
(NRB)(S.D.N.Y. filed Sept. 29, 2004), that was brought in this

Court by a group of winners of 2001 and 2002 contests, their parents and agents. On March 8, 2005, apparently because Williams's residency would have defeated this Court's diversity jurisdiction, Williams voluntarily dismissed her claims without prejudice. Subsequently, we issued an extensive 56-page Memorandum and Order in which we dismissed a number of the plaintiffs' claims and dismissed all defendants except for the L.A. Models defendants. Bezuszka et al. v. L.A. Models, Inc. et al., 04 CV 07703 (NRB), 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006). The case subsequently settled.

Presently before the Court is the L.A. Models defendants' motion to dismiss all of Williams's claims on statute of limitations grounds, or, in the alternative, for various pleading deficiencies in the complaint. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND[1]

We assume the parties' familiarity with our Memorandum and Order in the related case, and only set forth the facts relevant to plaintiff Caitlin Williams.

---

[1] The following facts are taken from the complaint as well as from this Court's Memorandum and Order in the related case, Bezuszka et al. v. L.A. Models, Inc. et al., 04 cv 07703 (NRB), 2006 WL 770526 at *1 (S.D.N.Y. Mar. 24, 2006). As is appropriate, all facts in the complaint are assumed to be true for purposes of this motion.

## A.   Caitlin Williams Enters the 2002 Contest

The "L.A. Looks Model Search Contest" was an annual, nationwide modeling contest which began in 1995 and offered its winners "coveted prizes" and "guaranteed modeling contracts" worth up to $100,000.[2]  The Contest was originally named after "L.A. Looks" hair care products, manufactured by Schwarzkopf & DEP, Inc., the Contest's primary creator and a defendant in the earlier action.  Schwarzkopf & DEP ceased their sponsorship after 2001. Consequently, the L.A. Models defendants renamed the contest the "L.A. Look Model Search Contest," without an "s" at the end of "Look," and recruited additional sponsors.[3]

In the spring of 2002, when Williams was 14 years old, she was approached at her school by a talent scout for Options Talent, Inc.

---

[2] As allegedly described on the websites of both defendants L.A. Models and N.Y. Models:

> "L.A. Looks has traveled across the U.S.A year to year to discover the next face in modeling and awarding $250,000 in guaranteed modeling contracts. In 2000, L.A. Look opened its search for men as well and started a contest between the sexes for the coveted prize of $100,000 · the only search in the USA to do this."

Compl. ¶ 14; Ex. A.  As further explained in a 2001 promotional press release:

> "We are searching the country for not only the next cover model, but for the next supermodel . . . . . Having received over 40,000 entries, the L.A. Looks Model Search is currently on tour visiting over 30 cities in the U.S., and is gearing up to make its final stop . . . to name the winner."

Compl. ¶ 15; Ex. B.

[3] <u>Bezuszka</u>, 2006 WL 770526 at * 1.

-3-

("Options Talent"), an alleged "co-partner" with the L.A. Models defendants in the 2002 Contest. Williams was interviewed and solicited to sign with Options Talent.[4]   She was told that in order to sign and enter the 2002 Contest, she needed to pay "dues." Thereafter, plaintiff paid Options Talent $600 upfront, and made additional monthly payments of $19.95.[5]

In July, 2002, Williams entered the first round, or "Regional Competition" of the 2002 Contest, held in King of Prussia, Pennsylvania, and was selected as one of twelve contestants to go to the "New York Regional Competition," to be held in New York City.

Williams alleges that at this time the L.A. Models defendants, through their representatives and agents, represented to her that she could win "prize money," "guaranteed income," and "an exclusive modeling contract," and that if she won the 2002 Contest, she would be entitled to "$100,000" and/or "guaranteed income of $100,000."[6]

Williams further alleges that, unbeknownst to her at the time, the defendants had already selected a model named Jessica Stam to be the 2002 Contest winner. Not only had Stam not competed in any of the Regional Competitions, she was a Canadian citizen, and

---

[4] Compl. ¶ 17.

[5] Compl. ¶ 18. The complaint does not indicate for how long Williams made monthly payments of $19.95.

[6] Compl. ¶ 25.

-4-

Williams alleges that she had been led to believe that the contest was only open to United States legal residents.[7]

On August 2, 2002, Williams competed in the New York Regional Competition, and was selected as a finalist, which entitled her to proceed to the National Final of the 2002 Contest.

Up to this point, there had been no written agreement between Williams and the defendants. On August 26, 2002, one week prior to the National Final, the defendants forwarded to Williams an eight-page standardized agreement, with schedules attached, entitled "L.A. Models/New York Model Management Agreement" (hereinafter "Model Management Agreement").[8] Williams acknowledges that she signed this contract on August 29, 2002.[9] The agreement was co-signed by Williams' mother, Linda, because Williams was under 18 at the time.

The Model Management Agreement set forth the terms of each prize to be awarded at the 2002 Contest, and specifically described the First Runner-up's prize as follows:

> L.A. Models/New York Model Management is offering a two-year modeling contract to the First Runner-up prize winner at the National

---

[7] Compl. ¶¶ 20 22; 27. It appears from the complaint that the source of Williams' belief was a 2001 press release, which set forth that the 2001 Contest was "open to male and female U.S. legal residents between the ages of 12-24." See Compl. ¶ 20; Ex. B.

[8] Williams does "not dispute the copy of the written agreement between the parties at issue produced by defendants." Plaintiff's Memorandum of Law in Opposition, at 2.

[9] Compl. ¶ 30; Plaintiff's Memorandum of Law in Opposition, at 2.

> Final, which contract provides a U.S. $75,000
> guarantee of gross income for the First
> Runner-up prize winner (subject to L.A.
> Models/New York Model Management's commission,
> as described below).  This guaranteed gross
> income is payable over a two-year period (see
> Schedule B).  If you are the First Runner-up
> and your gross income from modeling, on a
> cumulative basis, is less than the amounts
> shown on Schedule B hereto, then L.A.
> Models/New York Model Management shall advance
> you an amount equal to the cumulative
> shortfall; at the expiration of the Guaranty
> Period, to the extent the total received from
> gross income is less than $75,000, L.A. Models
> will pay you the difference between such
> amount and $75,000.[10]"

Attached to the Model Management Agreement was "Schedule B," which

set forth the specific monetary amounts - if not otherwise earned -

that L.A. Models would guarantee the First Runner-up.  The L.A.

Models would guarantee the First Runner-up $1,000 a month for the

first three months of the contract, then $1,200 for the following

three months, and so on in increasing increments of $200 a month

for the 24 months of the contract, with the balance of $34,200 due

at the end of the 24th month.[11]

The Model Management Agreement stipulated that it would become

effective two months after a contestant's selection as a prize

winner.  It also set forth a number of additional terms and

conditions, including a provision that required models to make

_____

[10] Model Management Agreement at ¶ 2(b).  (A copy of the 2002 Model
Management Agreement is attached as Exhibit A to the defendants' Request for
Judicial Notice.)

[11] Model Management Agreement at Schedule B.

themselves available in New York, Los Angeles, or any other place the defendants may designate;[12] a provision that limited a model's remedies against these defendants to "recovery of actual damages in an action at law";[13] and a choice-of-law clause selecting California law as governing.[14]

On September 5, 2002, Williams competed in the National Final of the 2002 Contest. She finished as the First Runner-up to Jessica Stam, who won the First Place prize.[15] Thus, under its own terms, the Model Management Agreement became effective as between Williams and the L.A. Models defendants on November 5, 2004.

### B.  Williams's Allegations Concerning Subsequent Events

Williams claims that she performed her end of the Model Management Agreement, insofar as she was willing and available to work, and traveled as requested to any auditions or shoots. However, she alleges, the L.A. Models defendants failed to meet the guarantees of income set forth in Schedule B, and failed to adequately manage her career. Williams claims that the L.A. Models

---

[12] Model Management Agreement at ¶ 2(c).

[13] Model Management Agreement at ¶ 7.

[14] Model Management Agreement at ¶ 11.

[15] Compl. ¶ 31. The complaint states that after the 2002 Contest Williams was "offered and entered into an exclusive model management agreement with defendant N.Y. Models." Compl. ¶ 32. It is not entirely clear whether this was a separate contract, but we assume it refers to the fact that the earlier contract became effective two months after September 5, 2002.

defendants were "unprepared"; they routinely sent her on pointless and inappropriate castings, assignments, and photo-sessions that failed to generate income;[16] and even borrowed money from her.[17] Finally, Williams also alleges that her parents spent considerable time and money to support her modeling career, and that she forewent educational opportunities, employment with other viable modeling agences, as well as other career goals.[18]

### C. Legal Proceedings

On September 29, 2004, a group of former contest winners, their parents, and John and Jane Does filed a complaint against the L.A. Models defendants and others involved in the 2001 L.A. Looks Model Search Contest (the "2001 Contest"). Bezuszka et al. v. L.A. Models, Inc. et al., 04 CV 07703 (NRB) (S.D.N.Y. filed Sept. 29, 2004). The plaintiffs originally only alleged claims arising out of the 2001 Contest, but on November 22, 2004 the plaintiffs filed an amended complaint, which added three new plaintiffs - including Caitlin Williams, and her mother Linda Williams[19] - and set forth

---

[16] Compl. ¶¶ 34-38. As one example, Williams claims that the L.A. Models defendants sent her to Brazil, but failed to adequately supervise the scheduled event, with the result that a runway collapsed, and Williams was severely injured. Not only did the L.A. Models defendants fail to compensate Williams for her lost time during this trip, but they billed her for the resulting costs. Compl. ¶ 38.

[17] Compl. ¶ 37.

[18] Compl. ¶ 42.

[19] The third new plaintiff was the agent of Jessica Stam.

thirteen causes of action relating to both the 2001 and 2002 Contests.[19]

Subsequently, on March 8, 2005, Linda and Caitlin Williams voluntarily dismissed their claims against all defendants without prejudice, apparently in response to a pending motion to dismiss for lack of diversity jurisdiction filed by defendant the Henkel Corporation.

All defendants eventually moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. On March 24, 2006 this Court granted in part and denied in part the defendants' motions. This Court held that plaintiffs had stated a breach of contract claim against the L.A. Models defendants, but failed to state any other claim, including claims for fraud, against any other defendants.[21] The remaining parties subsequently settled.

On June 28, 2007, Williams filed the instant complaint against the L.A. Models defendants in the Supreme Court of New York, alleging four claims: (1) breach of contest contract; (2) breach of "mother agency" contract; (3) fraud and intentional

---

[20] The claims were essentially of six varieties: (1) breach of contract; (2) fraud and intentional misrepresentation; (3) violations of New York and California state statutes prohibiting deceptive business practices; (4) unjust enrichment; (5) tortious interference with prospective business relations; and (6) accounting and constructive trust.

[21] See generally Bezuszka, 2006 WL 770526 at *1. We also found that as a result of our dismissing certain claims, only plaintiff Jessica Kuncl still satisfied the amount in controversy requirement of 28 U.S.C. § 1332(a). Nevertheless, we exercised supplemental jurisdiction over the remaining claims because they alleged nearly identical misconduct arising from a common nucleus of fact.

misrepresentation; and (4) constructive trust.[22] Defendants removed the matter to federal court on July 27, 2007, and we accepted the case as related.

## DISCUSSION

### I.  Standard of Review

In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is obligated to accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993). A defendant's motion is to be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996) (citing Conley v. Gibson, 355 U.S. 41, 48 (1957)).

The Court's consideration is limited to the factual allegations in plaintiffs' complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, and

---

[22] Williams originally asserted a cause of action for quantum meruit, but since defendants produced a copy of the written agreement between the parties, she has withdrawn this claim. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 9. See Bezuszka et al. v. L.A. Models, Inc. et al., 04 CV 07703 (NRB), 2006 WL 770526 at *11 (S.D.N.Y. Mar. 24, 2006)(noting that in New York as well as in California the general rule is that where there is an express contract no recovery can be had on a theory of quantum meruit)(citations omitted).

"documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)).


## II.   Statute of Limitations

The L.A. Models defendants first argue that Williams's claims are barred by applicable statutes of limitations, since the Model Management Agreement became effective on November 5, 2002, and was purportedly breached one month thereafter (when defendants failed to make the first guaranteed payment), but Williams did not file the instant suit until June 28, 2007.  Defendants note that under California law, which they claim governs this dispute, the statute of limitations is four years on written agreements, three years on fraud, and two years on oral contracts (quantum meruit).  See generally Cal. Civ. Proc. Code §§ 337-339 (West 2006).

However, under either California law or New York law (which plaintiff claims governs at least their fraud claims) the statute of limitations is tolled for the period that a plaintiff is under 18 years of age.  See Cal. Civ. Proc. Code § 352(a) (West 2006);[7]

---

[7] "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action."  Cal. Civ. Proc. Code § 352(a) (West 2006).

N.Y. C.P.L.R § 208.[24]  The complaint clearly sets forth that Williams was 14 years old at the time of the 2002 Contest in September, 2002.[25] Accepting this allegation as true, the earliest she could have possibly turned 18 was sometime in September, 2005. Indeed, in her opposition brief, Williams asserts that she turned 18 years old on November 14, 2005.[26]  Thus, the instant suit was filed less than two years from the date that Williams turned 18, and therefore is timely under any of the California or New York limitations periods for any of Williams's causes of action.

Accordingly, the defendants' motion to dismiss on the grounds of the statute of limitations is denied.


## III.  Pleading Deficiencies

Defendants next argue that the complaint fails to state a claim due to various pleading deficiencies.  We examine each of Williams's cause of action separately.


### A.  First Cause of Action - "Breach of Contest Contract"

---

[24] "If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . if the time otherwise limited is less than three years, the time shall be extended by the period of disability."  N.Y. C.P.L.R § 208.

[25] See Compl. ¶ 5.

[26] Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 3.

Williams's first cause of action - styled as "Breach of Contest Contract" - alleges that the defendants breached "oral agreements and written contracts," as well as various "promises" made by defendants or their agents to pay Williams "guaranteed income" or "prize money."[27] The L.A. Models defendants assert that this cause of action fails to provide adequate notice because it contains so many extrinsic matters as to make it impossible for the defendants to respond or prepare for trial. While we agree with the defendants, as we also did in <u>Bezuszka</u>, 2006 WL 770526 at *9, that the complaint is far from a model of clarity, we also again believe that the nature of the breach of contract allegation and the underlying facts alleged in support are sufficiently clear such that the claim may not be dismissed at this stage.

Under California law,[28] there are four elements of a breach of contract claim: (1) a valid contract between the parties; (2) performance by the plaintiff (3) an unjustified or unexcused failure to perform by the defendant; and (4) damages to plaintiff caused by the breach. <u>Bhari Info. Tech. Sys. Pvt., Ltd. v. Allied Boston Bank Inc.</u>, No. C 05-01223 SI, 2005 WL 3481473 at *5 (N.D. Cal. Dec. 20, 2005) (citing <u>Careau & Co. v. Sec. Pac. Bus. Credit,</u>

---

[27] Compl. ¶ 51.

[28] The Model Management Agreement signed by Williams and the defendants explicitly states that it is to be governed by and construed in accordance with California law.   Because we find that the Model Management Agreement is enforceable, we give effect to this choice-of-law provision.

Inc., 222 Cal. App. 3d 1371, 1388, 272 Cal. Rptr. 387, 395 (Cal. Ct. App. 1990)).

The Complaint adequately alleges these four elements with respect to the Model Management Agreement. First, the complaint alleges the existence of a contract. Compl. ¶¶ 29-30 ("plaintiff Williams signed and forwarded the agreement on the day of the Contest."). Second, it alleges that Williams complied with her obligations thereunder. Compl. ¶ 34 ("At all relevant times, plaintiff was willing and available to work; plaintiff traveled to New York, as requested and as needed."). Third, the Complaint repeatedly alleges that the defendants unjustifiably failed to fulfill their contractual obligations. Compl. ¶ 36 ("The defendants also failed to fulfill their promises to guarantee income and to pay plaintiff according to the 'guaranteed' monthly payments set forth in the schedule to the parties' agreement."). Finally, the Complaint adequately alleges that Williams was harmed as a result of the breach. Compl. ¶¶ 39-40, 42.

However, Williams has failed to state a claim for breach of contract with respect to any other agreements or contracts outside of the Model Management Agreement. Williams's scattershot allegations of "promises" and "oral contracts" made at various times by various agents of the defendants are simply insufficiently pled. As we wrote in Bezuzska:

> The Complaint refers both to "oral agreements and written contracts," though we are entirely unclear as to what oral agreements were alleged that were not subsumed by the written

-14-

> contracts. Whatever verbal representations
> were made all seemed to relate to the promise
> to provide the contest winners with written
> contracts. Consequently, in finding that the
> Model Plaintiffs have stated a claim for
> breach of contract against the L.A. Models
> Defendants, we are referring only to the
> actual written contracts, not to any oral
> agreements. The Complaint fails to adequately
> allege any agreements made outside the scope
> of the written contracts.

Bezuszka, 2006 WL 770526 at *9 n.15. Here as well the verbal promises and contracts that Williams alleges all relate to the promise to provide Williams with "guaranteed income" and a modeling contract should she win the 2002 Contest.[29] Consequently, the only contract that the complaint adequately alleges a breach of is the Model Management Agreement.

### B.   Second Cause of Action – "Breach of Contract as 'Mother Agent'"

Plaintiff's second cause of action alleges that the L.A. Models defendants "breached the parties' agreements" by "grossly mismanaging plaintiff's modeling career . . . failing to adequately promote [her], . . . and failing to exercise diligence and care in booking plaintiff for modeling jobs and in representing plaintiff to potential clients."[30]   Defendants contend that this cause of action should be dismissed as duplicative of the first.

---

[29] See e.g., Compl. ¶ 16,25

[30] Compl. ¶ 64.

To the extent plaintiff is alleging a breach of some contract other than the Model Management Agreement, plaintiff may not do so as she has failed to adequately plead the existence of any other contract.  See supra section III.A.  However, to the extent that this cause of action alleges that defendants breached the Model Management Agreement in other ways (for example, by breaching an implied covenant of good faith and fair dealing), it is best viewed as part of the first cause of action.

### C.  Third Cause of Action - Fraud and Intentional Misrepresentation

Williams's third cause of action is for fraud and intentional misrepresentation.  Williams alleges that she relied on a number of fraudulent representations made by defendants.  First Williams alleges (as did the plaintiffs *verbatim* in <u>Bezuszka</u>) that the L.A. Models defendants "did consciously and deliberately mislead the plaintiff . . . into believing that if [she] won the contest[] [she] would be awarded prize money and a modeling contract, not simply a 'guarantee of income' with numerous conditions, restrictions and deductions."  Compl. ¶ 71; <u>Bezuszka</u>, 2006 WL 770526 at *12.  Williams also alleges that the defendants advertised "guaranteed income" knowing that they would never be able to guarantee any income; the defendants improperly predetermined the winner of the contest; the defendants allowed a Canadian to win despite holding forth that the contest was only

-16-

open to United States residents; and, finally, that Williams was induced to pay an upfront fee and monthly payments to Options Talent as a prerequisite to entering the 2002 Contest.[31]

In Bezuszka, we held that the plaintiffs' fraud claims were either precluded by their breach of contract claim, or, in the alternative, were pled with insufficient particularity as required by Fed. R. Civ. P. 9(b). Bezuszka, 2006 WL 770526 at *12. The L.A. Models defendants now maintain that Williams's fraud claims replicate those of the plaintiffs in Bezuszka, and should be dismissed for the exact same reasons. Williams argues that her fraud claims are materially different.

We find that the bulk of Williams's fraud allegations are precluded by her breach of contract claim. Nevertheless, Williams does allege two fraudulent misrepresentations that are extraneous to the Model Management Agreement and, although relatively minor and perhaps difficult to prove, are sufficiently well-pled to survive dismissal of this cause of action at this stage.

### i. Applicable Law

---

[31] In Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Williams also alleges that the defendants intentionally deceived the contestants as to their affiliation with the company "L.A. Looks." However, as there is no such allegation in the complaint, this claim is not properly pled.

Under New York law,[32] the elements of a fraud claim are (1) the defendant made a material false representation, (2) with intent to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995); Bridgestone/Firestone, Inc. v. Recovery Credit Sys., Inc., 98 F.3d 13 (2d Cir. 1996)).

Additionally, as we noted in Bezuszka, a fraud claim must be "sufficiently distinct from the breach of contract claim," 2006 WL 770526 at *12 (citing Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996)), and "a contract claim cannot be converted into a fraud claim by the addition of an allegation that the promisor intended not to perform when he made the promise." Id. (citing cases).[33] If a fraud claim is brought based on the same

---

[32] We explained in the earlier action that our discussion focused on New York law and cases because both parties assumed application of New York law to the fraud claims in their memoranda of law. Although this choice of law issue is not necessarily conceded here, it would make no difference to the instant analysis whether we applied New York or California law. Under California law, the elements of a claim for fraud are substantially similar: "(a) misrepresentation; (b) defendant's knowledge of the statement's falsity; (c) intent to defraud ( i.e., to induce action in reliance on the misrepresentation); (d) justifiable reliance; and (e) resulting damage." Flaxel v. Johnson, 541 F.Supp.2d 1127, 1145 (S.D.Cal. 2008); Hunter v. Up-Right, Inc., 6 Cal.4th 1174, 1184, 26 Cal.Rptr.2d 8, 864 P.2d 88 (Cal. 1993)(citing Cal. Civ. Code § 1709).

[33] Again, the choice of law issue is immaterial here since California cases similarly provide that a breach of contract claim may not be pled as fraud absent evidence of an independently tortious act. See, e.g., Harris v. Atlantic Richfield Co., 14 Cal. App. 4th 70, 78, 17 Cal. Rptr. 2d 649, 654 (Cal. Ct. App. 1993) ("when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort"). Moreover, "[u]nder California law . . . , 'a written contract presumptively supersedes all

-18-

circumstances that give rise to a breach of contract claim, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract . . . or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, 98 F.3d 13, 20 (internal citations omitted).

Finally, a plaintiff must also plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b) requires that "'[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity,' an exception to the generally liberal scope of pleadings allowed by Rule 8, Fed. R. Civ. P." Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986) (citing Ross v. A.H. Robins Co., 607 F.2d 545, 557 (2d Cir. 1979), cert. denied, 446 U.S. 946 (1980)). In order to satisfy the requirements of Rule 9(b), a complaint alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

---

prior or contemporaneous oral agreements concerning the subject matter of the written contract.'" Sanguinetti v. Viewlogic Sys., Inc., No. C 95 2286 TEH, 1996 WL 33967 at *12 (N.D. Cal. Jan. 24, 1996) (quoting Sullivan v. Mass. Mutual Life Ins. Co., 611 F.2d 261, 264 (9th Cir. 1979)) (additional citations omitted).

### ii.  Williams's Allegations of Fraud

Many of Williams's allegations of fraud relate to provisions of the Model Management Agreement, and fail to fall into any of the applicable exceptions that would allow Williams to maintain a fraud and breach of contract claim at the same time.  Specifically, Williams's allegation as to the defendants' promises to pay "prize money" instead of guaranteed income, as well as her allegation that the L.A. Models defendants' entered into the Model Management Agreement knowing that they did not intend to abide by its terms are both aspects of the relationship between the parties that are explicitly covered by the Model Management Agreement.  It is clear that Williams's claims with respect to these allegations are simply claims for breach of contract dressed up as fraud.  As we wrote in analyzing the exact same claims in Bezuzska, "The allegations that are couched in the language of fraud are no more than breach of contract allegations masquerading as something more.  . . . [T]he Complaint alleges that the [plaintiffs] signed contracts with the defendants, who subsequently did not fulfill their obligations. These facts simply cannot give rise to a fraud claim."  Bezuszka, 2006 WL 770526 at *12.

Nevertheless, Williams does allege at least two misrepresentations which pre-date and are extraneous to the provisions of the Model Management Agreement. The first allegation is that Williams was told that she could win the First Place prize when in fact the 2002 Contest results were predetermined.  The

-20-

second allegation is that defendants represented in a 2001 press release that the contest was open only to United States legal residents, when in fact a Canadian won the 2002 Contest.[34]

Both of these allegations are sufficiently pled under Fed. R. Civ. P. 9(b).  Williams alleges that an agent of defendants named Erin Lundgren told Williams in July of 2002 that Williams could win guaranteed income of $100,000 (and therefore first place), when in fact the results of the 2002 Contest had been predetermined by the defendants.[35]  As for the 2001 press release, although it presumably related to the 2001 Contest, and not necessarily the 2002 Contest, this fact alone does not defeat Williams's fraud claim, if Williams can prove that it was reasonable for her to believe that the statement referred to the 2002 Contest as well, and that she did in fact rely on the statement.[36]  Although it is far from clear that Williams was reasonable in relying on the press release, the reasonableness of Williams's reliance is a question for the trier

---

[34] Compl. ¶ 20-21.

[35] Compl. ¶¶ 21, 24-25.  The only reason this allegation states a claim for fraud is that Williams in fact came in second in the 2002 Contest.  Otherwise, a statement made by the sponsors of a competition as to a particular contestant's potential to place first may be mere commercial puffery.  See, e.g., Siegel v. Bader, 238 A.D.2d 272, 657 N.Y.S.2d 28 (1st Dep't. 1997)("[T]o the extent such a representation was made, it was in the nature of opinion or puffery incapable of being proved true or false.").

[36] To establish reliance, Williams will have to attest that she contemporaneously gave thought to and acted upon the statement contained in the press release that the 2001 Contest was only open to United States citizens. Securities Investor Protection Corp. v. BDO Seidman, L.L.P., 95 N.Y.S.2d 702, 723 N.Y.S.2d 750 (N.Y. 2001).  Although this seems far-fetched, the reasonableness of Williams's reliance requires resolution by the trier of fact.

of fact. <u>Swersky v. Dreyer and Traub</u>, 219 A.D.2d 321, 643 N.Y.S.2d 33 (1st Dep't. 1996).

Finally, we address Williams's allegation that she was solicited by Options Talent to pay $600 upfront and $19.95 a month to enter the 2002 Contest. We are puzzled by this claim because although Williams maintains that such fees have been deemed "deceptive" and misleading by the New York State Consumer Protection Board,[17] she does not allege with any particularity exactly why the payment of these fees was false or misleading in this case. Upfront fees and monthly subscription charges may be generally indicative of scams or shady business practices, but they are not <u>ipso facto</u> fraudulent.[18] If Williams intends to argue that the "fraud" was to charge an upfront fee while never intending to find Williams any work as a model, then it would appear that such a claim might be precluded by the provisions of the Model Management Agreement. Or, if Williams's claim is that no other contestants had to pay a fee to enter the 2002 Contest, then the claim still presents an issue of agency law. Williams maintains that an entity known as "Options Talent" solicited her to sign and enter the contest, not the L.A. Models defendants, and the burden

---

[17] Compl. ¶¶ 17-18; 47; Plaintiff's Memorandum of Law in Opposition, at 10.

[18] Instructive in this regard is Cal. Lab. Code § 1701 et seq., which makes it illegal for any "advance fee talent service" to engage in certain business practices – including making misrepresentations or charging an artist for lessons. The law, however, does not <u>per se</u> prohibit an agency from charging upfront fees.

would be on Williams to show that Options Talent was acting with actual or apparent authority from the L.A. Models defendants.

In sum, we hold that Williams has sufficiently pled a fraud claim at least with respect to the two specific statements just discussed and allegedly made by the defendants prior to the point when the parties entered into the Model Management Agreement, and perhaps with respect to the allegation that she was forced to pay $600 upfront with monthly fees of $19.95.  We dismiss all of Williams's other allegations of fraud.  We also note, for the sake of completeness, that even if proven the remaining allegations of fraud would not appear to alter significantly the damages calculations.  For, even if the 2002 Contest results were predetermined, Williams would be entitled at most to $25,000 - the difference between the income guaranteed to the first place prize winner and Williams.

### D.   Fourth Cause of Action - Constructive Trust

Finally, Williams brings a cause of action for a constructive trust, alleging that she is "the rightful owners of funds totaling over . . . $75,000.00" and demanding that a constructive trust be imposed on the prize monies allegedly owed to her.  However, as we noted in <u>Bezuzska</u>, "[U]nder both New York and California law, a plaintiff seeking a constructive trust must plead a fiduciary duty (or, in New York, a 'confidential relationship') between plaintiff and defendant."  <u>Bezuszka</u>, 2006 WL 770526 at *18 (citing to <u>Maynor</u>

-23-

v. Pellegrino, 226 A.D.2d 883, 884, 641 N.Y.S.2d 155, 157 (3d Dep't 1996); Michaelian v. State Comp. Ins. Fund, 50 Cal.App. 4th 1093, 1114, 58 Cal.Rptr.2d 133, 147 (Cal.Ct.App. 1996)).[19] As Williams has failed to make any such allegation, her cause of action for a constructive trust is dismissed.

## IV. Leave to Amend

Finally, we deny plaintiff's request for leave to amend or replead the complaint pursuant to Fed. R. Civ. P. 15(a). Williams already filed a complaint in the earlier action, wherein she was represented by the same attorney as here. Accordingly, she has had the benefit of repleading by filing the instant complaint *after* our extensive Memorandum and Order in that action, which detailed the deficiencies with the original pleadings. The complaint in this case thus already represents a second bite at the apple, and plaintiff is not entitled to a third. Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.Supp.2d 282, 304 n.27 (S.D.N.Y. 2000)("Leave to amend is appropriately denied where, as here, the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies"); Chill v. General Electric Co., 101 F.3d 263, 271-72 (2d Cir. 1996); In re

---

[19] We also noted in Bezuzska that under California law, courts explicitly recognize that "[a] constructive trust is not a substantive device but merely a remedy . . . ." Bezuzska, 2006 WL 770526 at *18 n.36 (citing Embarcadero Mun. Improvement Dist. v. County of Santa Barbara, 88 Cal. App. 4th 781, 793, 107 Cal. Rptr. 2d 6, 15 (Cal. Ct. App. 2001)).

Hyperion Securities Litigation, No. 93 Civ. 7179, 1995 WL 422480, at *8 (S.D.N.Y. Jul. 14, 1995) (denying leave to amend where plaintiffs had been given "more than two bites at an apple they have not been able to get their teeth into") aff'd 98 F.3d 2 (2d Cir. 1996).

## CONCLUSION

For the foregoing reasons, defendants motion to dismiss is granted in part and denied in part. If the case has not otherwise settled before then, the parties are directed to call in to Chambers for a telephone conference at 3:30 p.m. EST on August 21, 2008.

**SO ORDERED.**
Dated:    New York, New York
          August 5, 2008

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-25-